## Richmond

FRANKLIN R. WILLIAMS v. CITY OF PETERSBURG AND COMMON-
WEALTH OF VIRGINIA.

September 5, 1975.

Record Nos. 741144 and 741145.

Present, All the Justices.

*Lawrence E. Blake*, for plaintiff in error.

*James F. D'Alton, Jr., Assistant Commonwealth's Attorney (J. Thompson Wyatt, Commonwealth's Attorney*, on brief), for defendants in error.

COMPTON, J., delivered the opinion of the court.

In this appeal involving two misdemeanors, we affirm the convictions by the circuit court, sitting without a jury, of Franklin R. Williams for (1) operating a motor vehicle while under the influence of intoxicants, in violation of a Petersburg City Ordinance,[1] and for (2) refusing to permit the taking of a sample of his breath for a chem-

---

[1] That ordinance is almost identical to the State statute and provides, in part, that "[n]o person shall drive or operate any automobile . . . in the city while under the influence of alcohol . . . ." Petersburg Code § 22-142 (1964). The State statute, Code § 18.1-54, provides, in pertinent part, that "[i]t shall be unlawful for any person to drive or operate any automobile . . . while under the influence of alcohol . . . ."

ical test to determine the alcoholic content of his blood, in violation of a State statute.[2] The issues we focus on are whether the evidence was sufficient to support the conviction of the former charge and whether a misrecital of the applicable code section invalidates the conviction of the latter charge.

On May 3, 1974, at about 4:00 a.m., uniformed Officer John E. Flanagan of the Petersburg Bureau of Police was walking near the intersection of Sycamore and Bollingbrook Streets in the City of Petersburg when his attention was attracted to a stopped automobile by "the sound coming from [its] exhaust." The vehicle was on a nearby cement paved parking lot.[3] Flanagan walked to the car and observed the defendant, the only occupant, "slumped over the steering wheel." The motor was running. The headlights were not burning. The car windows were closed and the doors were locked.

Flanagan testified that he tried, without success, to "attract [the defendant's] attention" by tapping on the car window and yelling to him, "I'm a police officer." With the assistance of another policeman, who "responded" to the scene, the defendant was aroused at which time he made "a motion to the gear shift" of the vehicle. Because of the darkness, Flanagan could not determine whether the vehicle was then "in gear." After making the "motion" to the gearshift, the defendant "cut the automobile off."

The defendant refused to speak and refused to open a car door or a window. A police lieutenant then arrived on the scene and he advised the defendant to "come out" or the police would "use force" to remove him from the vehicle. The defendant's only comment was that "he was going to jail if he did [come out] and he was going to jail if he didn't." He remained inside the car. After continuing for fifteen minutes their attempts to get the defendant to leave the car voluntarily, during which time the defendant jumped into the back seat of the vehicle, the officers then broke the window and forcibly removed him.

After the defendant was taken from the vehicle, he was "unstable" and "unsteady" on his feet and had a "smell of alcohol on his breath," according to Officer Flanagan. No alcoholic beverages were observed in the vehicle by the officer.

---

[2] Code § 18.1-55.1.

[3] The evidence does not establish whether the parking lot was publicly or privately owned, but because the city ordinance, note 1 *supra*, proscribes the prohibited conduct "in the city," ownership of the parking lot is not relevant in this case. *See Valentine v. Brunswick County*, 202 Va. 696, 698-99, 119 S.E.2d 486, 487-88 (1961).

The evidence shows that after being arrested for operating a motor vehicle while under the influence of alcohol, the defendant refused to permit the taking of a sample of his blood or breath for a chemical test to determine the alcoholic content of his blood, in violation of Code § 18.1-55.1

## Operating Under the Influence

The defendant contends that the evidence fails to establish beyond a reasonable doubt, first, that he was under the influence of alcohol or, second, that he was "operating" the vehicle within the meaning of the ordinance.

In support of his contentions, the defendant relies on his own testimony, and that of a witness, Mary Jo Johnson. This evidence showed that "off and on" during the period from about 7:00 p.m. on May 2 until three hours before the arrest, the defendant, in the company of the witness, consumed "a few beers" and "a few drinks" while in Dinwiddie County at "band practice" and while in "downtown" Petersburg at several restaurants.

According to the defendant, he had driven the witness in his car from Petersburg to the nearby county about 7:00 p.m. She drove the vehicle when they returned to Petersburg about 9:30 p.m., and parked the car on the lot where the defendant was subsequently arrested. From 9:30 p.m. to about 1:00 a.m. on May 3, the defendant, according to the witness, was "up and down and all over the place" visiting restaurants in the immediate area where the car was parked. The defendant stated that about 1:00 a.m., because he was tired and because of the "drinks," he "figured" he ought not to drive. He then decided to "sleep for a while" in his car, which was still on the lot where it had been parked earlier. He entered the car, fell asleep and, sometime later, he woke up "cold" and "started the engine and turned the heater on." He testified that he did not move the car and had no intention of moving it. He stated he left the car keys in the ignition and again fell asleep with the motor running, until he was later awakened by the officers.

We reject the defendant's contentions. In the first place, the evidence is abundant that the defendant was under the influence of alcohol when he was taken into custody, despite his argument that sufficient time had elapsed when he was arrested to "dissipate what intoxication was present at 1:00 a.m." He was "slumped over" the steering wheel of his motor vehicle in the early hours of the morning. He was difficult to arouse. When aroused, he was belligerent. He

refused to follow the orders of three uniformed police officers to get out of his car. He vaulted from the front seat of his locked vehicle to the rear thereof. He was obstinate and had to be forcibly removed from the car. After being removed, he was "unsteady" and "unstable" on his feet. He had the odor of alcohol about him, and this fact distinguishes this case from *Miller* v. *Commonwealth*, 214 Va. 689, 204 S.E.2d 268 (1974) and *Clemmer* v. *Commonwealth*, 208 Va. 661, 159 S.E.2d 664 (1968), relied on by the defendant. Accordingly, the requirements for proving that the defendant was under the influence of alcohol were met because his intoxicated condition was established and there was evidence which indicated the agency responsible for the intoxication. 208 Va. at 663-64, 159 S.E.2d at 666.

In the second place, we hold that the evidence supports the trial court's finding that the defendant was "operating" the vehicle within the meaning of the ordinance, which makes it unlawful for any person to "drive or operate" an automobile while under the influence of alcohol. The defendant relies, in part, on cases from other jurisdictions to sustain his position that he was not "operating" the vehicle at the time of arrest. But we need not look elsewhere for precedent because our recent decisions control the result here. In *Gallagher* v. *Commonwealth*, 205 Va. 666, 139 S.E.2d 37 (1964) and in *Nicolls* v. *Commonwealth*, 212 Va. 257, 184 S.E.2d 9 (1971), we construed the language "drive or operate," as contained in the State drunk driving statute, note 1 *supra*.

In *Gallagher*, the defendant, under the influence of intoxicants, was found behind the steering wheel of his vehicle which was hung in a ditch. The car was partially on a public highway, was in gear, and was being accelerated by the defendant, but it would not move because it lacked sufficient traction. The defendant was adjudged guilty of "operating" a motor vehicle while under the influence of intoxicants. We pointed out that "driving" an automobile means putting it in motion but that "operating" a vehicle has a broader meaning. "Operating" not only includes the process of moving the vehicle from one place to another, but also includes starting the engine, or manipulating the mechanical or electrical equipment of the vehicle without actually putting the car in motion. It means engaging the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle. 205 Va. at 668-70, 139 S.E.2d at 39-40.

In *Nicolls*, although the vehicle was inoperable, it was parked at night on a public highway with the motor running and in gear. The.

high beam lights were on and the defendant, alone in the car, was "slumped" over the steering wheel and his hands were "hanging down." We followed *Gallagher* and held that Nicolls was "operating" his vehicle, that is, he was in "actual physical control," within the meaning of the statute, while under the influence of alcohol. 212 Va. at 259, 184 S.E.2d at 11.

The facts here present a stronger case of "operating" a vehicle than did the facts in either *Gallagher* or *Nicolls*. Here the vehicle was movable and not inoperable. From a mechanical standpoint, it was capable of being immediately placed in motion to become a menace to the public, and to its drunken operator. Coupled with the foregoing fact is the evidence that the defendant was "slumped" over the steering wheel. The motor of the car was running. Upon being aroused, the defendant made a "motion" to the gearshift. The motor was then cut off by the defendant. From all of these facts, the trial court could properly find beyond a reasonable doubt that the defendant was in actual physical control of the vehicle and that he had engaged the machinery of the vehicle which alone, or in sequence, would have activated its motive power. Therefore, the defendant was "operating" the vehicle within the meaning of the ordinance.

The trial court was not required to accept the defendant's account of the incident, which was that he had started the engine merely for the purpose of using the car heater to keep warm and not for the purpose of driving the vehicle. Indeed, the trial judge stated on the record that the defendant's conduct "upon and after the arrival of the police casts a great deal of doubt upon his entire story as far as I'm concerned."

### Refusing to Take the Breath Test

We also reject the defendant's argument that his conviction for refusing to permit the taking of a sample of his breath for a chemical test to determine the alcoholic content of his blood, as required by Code § 18.1-55.1, was invalid because the warrant contained a misrecital of the applicable code section. The warrant erroneously referred to Code § 18.1-54.1, which provides that any person suspected of violating Code § 18.1-54 shall be afforded the opportunity to have his breath analyzed, a so-called preliminary "field test," if appropriate equipment is available.

Even though the statutory reference was incorrect, the warrant specifically charged the defendant with refusing to take a

"breath test to determine probable alcoholic contents of his blood after having been arrested for driving under the influence of alcoholic beverage[s] or other self-administered drugs." This is the gravamen of the crime set out in Code § 18.1-55.1. Accordingly, we hold that the offense charged was adequately stated in the warrant and that the defendant was not prejudiced in preparing his defense; hence, the misrecital does not invalidate the conviction. Rule 3A:4 (c)(1); Rule 3A:7(a).

We have carefully considered the other errors complained of by the defendant in these cases and find them to be without merit.

The judgments of conviction will therefore be

*Affirmed.*

HARRISON, J., dissenting in part.

I would acquit the defendant of operating a motor vehicle while under the influence of intoxicants. While the evidence is overwhelming that Williams was drunk, he did not operate his vehicle while in that condition. Indeed, the evidence shows that he realized that he was too drunk to operate his car and decided to go to sleep. The fact that he remained in his parked vehicle from 1 a.m. until 4 a.m. without moving it, and that when awakened by the police officers he turned the motor off, showed a lack of intent on his part to move the vehicle before he was sober.

The sole evidence upon which defendant's conviction is based is that he started the engine and turned on the heater. Most certainly no serious significance can be attached to a mere hand motion or gesture made by a man immediately upon being awakened out of a drunken stupor by police officers "yelling" at him and "tapping" on his car window.

Defendant did exactly what others should do upon finding that they have consumed too much alcohol to operate a vehicle—stop drinking and go to sleep. For security purposes he locked his car doors. To keep from getting too cold he started the heater. He did nothing with his car that was a menace to himself or to the public. For us to hold that what the defendant did in this case amounts to operating a car within the purview of Code § 18.1-54, or the Petersburg ordinance, is unrealistic and unreasonable.

The majority says that "operating . . . includes starting the engine, or manipulating the mechanical or electrical equipment of the vehicle without actually putting the car in motion". Under such a holding, a person who has been drinking heavily can not sit, rest or sleep in

his own automobile and operate the mechanical or electrical devices necessary to raise or lower the windows, turn on the radio, heater or air conditioning, activate a flashing or warning light, or lock the doors, without being guilty of "operating a motor vehicle under the influence". Neither the statute nor the cases cited by the majority demand or support such a strained conclusion.

In *Gallagher* the defendant was in full control of his vehicle, sitting in the driver's seat, accelerating the motor with the car in gear, trying to get it out of a ditch. The rear wheels of his car were spinning, and the defendant did not move the car only because the wheels lacked sufficient traction. Further, the evidence showed that immediately prior to the arrival of the police, the defendant had tried to drive his vehicle out of the ditch with the aid of a tow truck, and failed because the rope, which attached his vehicle to the truck, had broken. Gallagher was in fact operating his vehicle.

In *Nicolls* the defendant was in control of his vehicle which was sitting on the hard surface of a state highway just outside the Town of Onancock. Its motor was running, the car was in gear, the heater was operating, and its highbeam lights were on. Nicolls was slumped over the steering wheel, with his hands hanging down, in a drunken condition. It was raining and snowing at the time. While the evidence showed that Nicolls' car was probably inoperable at the moment the officers arrived, the evidence was sufficient for the court to have found that the defendant had driven the vehicle to the point where it was found on the highway, and had endeavored to drive it away from there, failing only because of the mechanical condition of the car. We held that under "the facts proved", Nicolls was guilty of operating his vehicle. The facts proved in the case under review dictate a contra holding.

The state statute and the city ordinance are designed to prohibit and punish a person for "operating", not for "occupying", a vehicle while under the influence of alcohol.

I concur in so much of the opinion as affirms the defendant's conviction of violating Code § 18.1-55.1.

CochRan and Poff, JJ., join in this dissent.