COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


ALTON CALVIN LEAKE, JR.
                                            OPINION BY
v.  Record No. 2609-96-2          JUDGE JAMES W. BENTON, JR.
                                          APRIL 7, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                  Paul M. Peatross, Jr., Judge

         Francis McQ. Lawrence (Charles Y. Sipe;
         St. John, Bowling & Lawrence, on brief), for
         appellant.

         H. Elizabeth Shaffer, Assistant Attorney
         General (Richard Cullen, Attorney General, on
         brief), for appellee.


     Alton Calvin Leake, Jr. was convicted of a second offense of

driving a motor vehicle while under the influence of alcohol.

See Code §§ 18.2-266 and 18.2-270.  On appeal, he contends (1) he

was not "operating" his vehicle when the police officer

approached it, (2) the evidence failed to prove he was under the

influence of alcohol when the officer approached his vehicle, and

(3) the evidence failed to prove his condition when he earlier

operated the vehicle.  For the reasons that follow, we affirm

Leake's conviction.

                              I.

     Officer Scott Byram of the Albemarle County Police

Department was the only witness at trial.  Byram testified that

he was on patrol at 2:42 a.m., when he saw a pickup truck stopped

in the travel lane of a ramp that exits from Route 250.  Both

doors of the truck were open, the engine was running, and the headlights and taillights were illuminated.

Byram exited his police vehicle and approached the driver's side of the truck. Looking through the truck's open driver-side door, Byram saw Leake standing on the road beside the truck's passenger door. Leake was bending over into the interior compartment of the truck and placing a long knife underneath the floorboard mat. When Byram asked Leake if everything was all right, Leake jumped as if startled and said he was cleaning his truck. As Leake spoke to Byram, Byram detected an odor of alcohol coming through the truck and noticed that Leake's speech was slurred. Byram testified that he saw no evidence of cleaning.

Byram asked Leake to step to the rear of the truck and to perform sobriety tests. Leake was unsteady on his feet and staggered as he walked to the rear of the truck. At one point, when Leake lost his balance, Byram grabbed Leake's arm to ensure he would not fall. Byram asked if Leake had any physical or mental handicaps. Leake said he had a depth perception problem in one eye. Leake also said he had consumed two beers between 2:00 p.m., when he left work, and 45 minutes prior to Byram's arrival. In response to Byram's inquiry "why he was out at this time of the night," Leake said he had "just left his house to ride around the block and was going straight back home." Leake said he was alone at the truck.

- 2 -

At Byram's request, Leake began to recite the alphabet. When Leake uttered the letters L and M, he slurred them together. Leake stopped at the letter R and said he was dyslexic and was having trouble completing the alphabet. Byram then asked Leake to count backwards from 37 to 19. Leake refused. Leake also refused to perform the "one-leg stand" test and the "heel-to-toe" test. Byram arrested Leake.

The trial judge convicted Leake of operating a motor vehicle in violation of Code § 18.2-266 as a second offense within five years. See Code § 18.2-270.

## II.

Code § 18.2-266 prohibits "any person to drive or operate any motor vehicle . . . while such person is under the influence of alcohol." Code § 46.2-100 defines "operator" as "[e]very person who drives or is in actual physical control of a motor vehicle upon a highway." Reading those statutes together, the Supreme Court of Virginia has ruled that the General Assembly intended that the word "'operate' . . . should cover an activity in addition to driving." Gallagher v. Commonwealth, 205 Va. 666, 668-69, 139 S.E.2d 37, 39 (1964). Thus, the Court held that an accused accelerating the motor of a vehicle, which could not move because of a lack of traction, was operating the vehicle. See id. In determining conduct that might be encompassed within the term "operate any motor vehicle," the Court relied upon the definition of "operator" and focused upon the words "actual

physical control" of the motor vehicle.  Id.  See also Nicolls v. Commonwealth, 212 Va. 257, 258-59, 184 S.E.2d 9, 11 (1971).

In Williams v. City of Petersburg, 216 Va. 297, 217 S.E.2d 893 (1975), the Court elaborated upon the term and ruled as follows:

> "Operating" not only includes the process of moving the vehicle from one place to another, but also includes starting the engine, or manipulating the mechanical or electrical equipment of the vehicle without actually putting the car in motion.  It means engaging the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle.

216 Va. at 300, 217 S.E.2d at 896.

The evidence in Williams proved that a police officer approached a vehicle which was stopped in a parking lot with the motor running, its windows closed, and its doors locked.  The accused was slumped over the steering wheel.  Holding that the accused was "operating" the vehicle, the Court noted that "[f]rom a mechanical standpoint, [the vehicle] was capable of being immediately placed in motion . . ., that [the accused] was in actual physical control of the vehicle and that he had engaged the machinery of the vehicle which alone, or in sequence, would have activated its motive power."  Id.

In two more recent cases, the Court ruled that the evidence failed to prove the accused was operating a motor vehicle.  In Overbee v. Commonwealth, 227 Va. 238, 315 S.E.2d 242 (1984), the accused was arrested while standing in front of his vehicle with

- 4 -

the hood up.  The engine was not running and the key was in the accused's pocket.  Id. at 243, 315 S.E.2d at 244.  Distinguishing Gallagher, Nicolls, and Williams, the Court stated that in those cases, the accused "was in the driver's seat and in control of the vehicle when the police found him."  Overbee, 227 Va. at 243, 315 S.E.2d at 244.  The Court held that even if "Overbee's possession of the keys may have given him the means of effecting control of the truck, . . . [Overbee] cannot be said to have been in actual physical control of the vehicle when he was standing in front of it on the highway."  Id.

The Supreme Court also ruled in Stevenson v. City of Falls Church, 243 Va. 434, 438, 416 S.E.2d 435, 438 (1992), that the accused, who was asleep behind the steering wheel of a parked vehicle, was not operating the vehicle.  Although the key was in the ignition, "[t]he engine of the motor vehicle, and all of its other mechanical and electrical parts were off."  Id. at 435, 416 S.E.2d at 436.  Discussing "the extent of the accused's activity necessary to constitute 'actual physical control' of a vehicle," id. at 437–38 n.2, 416 S.E.2d at 437–38 n.2, the Court noted the following:

> In three cases, we have held that a vehicle occupant was in "actual physical control" of the vehicle within the meaning of Code § 46.1-1(17) when he was seated behind the steering wheel and performed certain acts. Williams v. City of Petersburg, 216 Va. 297, 301, 217 S.E.2d 893, 896 (1975) (ran engine and made "motion" to gearshift); Nicolls v. Commonwealth, 212 Va. 257, 258, 184 S.E.2d 9, 10 (1971) (activated headlights and heater and ran engine with car in high gear but lack

- 5 -

> of fluid in transmission made car
> inoperable); <u>Gallagher v. Commonwealth</u>, 205
> Va. 666, 670, 139 S.E.2d 37, 38 (1964)
> (accelerated engine with car in gear although
> car immobile because stuck in ditch).

<u>Id.</u> at 437, 416 S.E.2d at 437 (footnote omitted).  Although Stevenson was behind the wheel of the vehicle, the Court held that "[b]ecause the presence of the key in the ignition switch in the off position did not engage the mechanical or electrical equipment of Stevenson's car, Stevenson did not 'drive or operate' the car within the meaning of the statutes."  <u>Id.</u> at 438, 416 S.E.2d at 438.  <u>See also</u> <u>Potts v. Commonwealth</u>, 12 Va. App. 1093, 408 S.E.2d 256 (1991).

We discern from these decisions that an accused's presence in or about a motor vehicle when arrested is insufficient, standing alone, to prove that the accused had "actual physical control" of the motor vehicle.  <u>See</u> <u>Stevenson</u>, 243 Va. at 438, 416 S.E.2d at 438; <u>Overbee</u>, 227 Va. at 243, 315 S.E.2d at 244.  This principle applies even when the evidence proved that the accused drove the vehicle to that location at an earlier time. <u>See</u> <u>Overbee</u>, 227 Va. at 241, 315 S.E.2d at 243.  The Court's decisions imply that presence must be coupled with some other contemporaneous circumstance, such as the following:

> moving the vehicle from one place to another,
> . . . [or] starting the engine, or
> manipulating the mechanical or electrical
> equipment of the vehicle without actually
> putting the car in motion . . . [or] engaging
> the machinery of the vehicle which alone, or
> in sequence, will activate the motive power
> of the vehicle.

<u>Williams</u>, 216 Va. at 300, 217 S.E.2d at 896.  <u>See also</u> <u>Propst v.</u> <u>Commonwealth</u>, 24 Va. App. 791, 794, 485 S.E.2d 657, 659 (1997).

III.

Leake argues that he was not behind the wheel of the truck as were the accuseds in <u>Gallagher</u>, <u>Nicolls</u>, and <u>Williams</u>. Relying upon <u>Overbee</u>, Leake further argues that he could not be said to have been in actual physical control of the vehicle when he was standing outside the vehicle on the passenger side.  We conclude that other circumstances exist to prove that he was operating the truck.

The evidence proved that Leake earlier had driven the truck to its location.  Although Leake was not driving the truck when the officer saw him, Leake told the officer he had "just left his house to ride around the block and was going straight back home." The truck's engine was still running, and the truck's headlights and taillights were illuminated.  The evidence also proved that Leake was leaning into the interior compartment of the truck. Leake told the officer he was cleaning the truck and was alone.

Although Leake was standing on the road, he was bending his body into the interior space of his truck when the officer saw him.  That circumstance is significant because the truck's keys were in the ignition and the motor was running.  We conclude from <u>Stevenson</u> and <u>Overbee</u> that the location of the vehicle's key in the ignition is a relevant but not dispositive factor.  The Court ruled in <u>Stevenson</u> that "[b]ecause the presence of the key in the

ignition switch in the off position did not engage the mechanical or electrical equipment of [the accused's] car, [the accused] did not 'drive or operate' the car within the meaning of the statute."  243 Va. at 438, 416 S.E.2d at 438.  The Court also noted in Overbee that "[t]he engine was not running; the ignition key had been removed."  227 Va. at 243, 315 S.E.2d at 244.

Unlike the accused in Stevenson and Overbee, Leake was present at his truck while the truck's engine continued to run. The mechanical and electrical equipment of the truck that Leake had earlier engaged continued to function.  Consequently, the truck was "capable of being immediately placed in motion." Williams, 216 Va. at 300, 217 S.E.2d at 896.  Leake remained with the truck after he had "start[ed] the engine . . . [and] manipulat[ed] the mechanical or electrical equipment of the vehicle . . . [and] engag[ed] the machinery of the vehicle."  Id. Significantly, no other person was present.

Leake argues he was outside the truck, as was the accused in Overbee.  The evidence proved, however, that some part of Leake's body was in fact inside the interior of the truck.  He was "bent over doing something in the floorboard" and had been "putting a long knife underneath the passenger floorboard mat."  Under these circumstances, Leake's continued presence in and around the truck in the absence of any other person proved beyond a reasonable doubt that Leake was in actual physical control of the truck.

"[T]he meaning of the word 'operate' as used in . . . [Code

§ 18.2-266 is] not limited to the movement of the vehicle." Nicolls, 212 Va. at 259, 184 S.E.2d at 11.  Accordingly, we hold that the evidence was sufficient to prove beyond a reasonable doubt that Leake was operating his truck when the officer approached him.

IV.

Leake argues that even if he was "operating" the truck at the time the officer saw him, we must reverse the conviction. Admitting that the "Commonwealth's evidence does show odor of alcohol, slurred speech, unsteadiness of foot or lack of balance," Leake argues that the evidence fails to prove either that his behavior was caused by alcoholic beverages or that he was intoxicated.  See Miller v. Commonwealth, 214 Va. 689, 690, 204 S.E.2d 268, 269 (1974) (holding that "evidence [must tend] to establish the agency responsible for the erratic behavior of the accused").  Rather, Leake argues his behavior was caused by a combination of his consuming two beers earlier in the evening, his dyslexia and depth perception problems, and his lack of coordination and intelligence.

Because the Commonwealth offered no chemical test of Leake's blood or breath, the issue of Leake's intoxication had "to be determined from all of the evidence of his condition at the time of the alleged offense."  Brooks v. City of Newport News, 224 Va. 311, 315, 295 S.E.2d 801, 804 (1982).  In considering the totality of the circumstances surrounding his condition, the

Court may be guided by the statutory definition of intoxication. See id. at 316, 295 S.E.2d at 804. "'Intoxicated' means a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." Code § 4.1-100.

Viewed in the light most favorable to the Commonwealth, see Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), the evidence proved beyond a reasonable doubt that Leake was under the influence of alcohol at the time the officer arrived. Leake stopped his truck at 2:42 a.m. in the travel portion of a ramp that exits the highway. The truck was not "in the emergency lane, [the] little pull off area" adjacent to the travel lane. Leake smelled of alcohol. Apart from intoxication, the evidence contains no reasonable hypothesis to explain why Leake, who was just "around the block" from his home, would stop his truck in the travel lane of a public road in the middle of the night, open both doors, and get out to clean the truck. These circumstances give rise to an inference that Leake was intoxicated when he was moving about his stopped truck in the travel portion of the highway exit ramp. Cf. Lyons v. City of Petersburg, 221 Va. 10, 12-13, 266 S.E.2d 880, 881 (1980) (inferring that defendant's car was where it was at the time because he drove it there and that he was under the influence of alcohol at that time); Hall v. Commonwealth, 25 Va. App. 352, 355, 488 S.E.2d 651, 653 (1997) (noting that court could infer

- 10 -

defendant drove her car to the area while under the influence of alcohol); Propst, 24 Va. App. at 795, 485 S.E.2d at 659 (noting that circumstances proved accused was under the influence of alcohol when he stopped his truck so as to protrude into the intersection).

In addition, the evidence proved Leake staggered as he walked and was unsteady on his feet. At one point, Byram had to grab Leake's arm to ensure he would not fall. Leake had an odor of alcohol about him, his speech was slurred, and he failed to accomplish a test given to indicate sobriety. With Leake's admission of earlier alcohol consumption and the other signs of intoxication (odor of alcohol, slurred speech, unsteadiness in walking, poor balance, inability to correctly recite the alphabet), the trial judge was not required to believe that Leake had consumed only two beers in the twelve hours before his arrest or that dyslexia or a depth perception problem was the cause of Leake's unsteadiness and difficulty in reciting the alphabet. See Williams, 216 Va. at 301, 217 S.E.2d at 896.

The evidence was sufficient to prove beyond a reasonable doubt that Leake had "drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." Code § 4.1-100. "Accordingly, the requirements for proving [beyond a reasonable doubt] that [Leake] was under the influence of alcohol were met because his intoxicated condition was established and there was

evidence which indicated the agency responsible for the intoxication."  <u>Williams</u>, 216 Va. at 300, 217 S.E.2d at 896.

Because the evidence was sufficient to prove beyond a reasonable doubt that Leake was operating his vehicle while he was intoxicated, we affirm his conviction.

<u>Affirmed.</u>