COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, McClanahan and Haley
Argued at Chesapeake, Virginia


ELLEN MARIE RIX

OPINION BY
v.      Record No. 1424-09-1      JUDGE ELIZABETH A. McCLANAHAN
AUGUST 17, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge

Michael J. Woods (Michael J. Woods, P.C., on brief), for appellant.

John W. Blanton, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.


Ellen Marie Rix appeals from her convictions in a bench trial for driving or operating a

motor vehicle while under the influence of alcohol and refusal to take a blood or breath test, both

second offenses.  Rix argues the evidence was insufficient to support her convictions because she

did not drive or operate a motor vehicle within the meaning of the DUI statute.  Disagreeing with

her arguments, we affirm the judgment of the trial court.

I.  BACKGROUND

Virginia Beach Police Officer B.K. Womble observed a vehicle weaving on the highway.

He stopped the vehicle and, as he approached, he observed the driver, Veselina Stoilova, switch

seats with Rix, who had been sitting in the front passenger's seat.[1]  When Officer Womble reached

the vehicle, Rix was sitting in the driver's seat, the keys were in the ignition, and the engine was

---

[1] At trial, Stoilova testified she asked Rix to switch seats with her because she did not
have a driver's license.  Rix testified she switched seats with Stoilova because she believed
Stoilova would be deported if arrested.

running.  Officer Womble asked Rix to step out of the vehicle and, when she did so, he noted a strong odor of alcohol about her.  Womble observed that Rix had slightly slurred speech, and bloodshot and glassy eyes.  In addition, her ability to stand and walk was impaired.  Rix refused to perform any field sobriety tests telling the officer she had not been driving the vehicle.  After Officer Womble arrested Rix for driving or operating a vehicle under the influence of alcohol, she refused a breath test stating, again, that she was not driving the vehicle.  Rix was convicted, in a bench trial, of driving or operating a vehicle in violation of Code § 18.2-266, second offense within five years, and refusal to take a breath or blood test in violation of Code § 18.2-268.3, second offense within five years.

## II.  ANALYSIS

Rix contends the evidence was insufficient to prove she drove or operated a vehicle within the meaning of Code § 18.2-266 because she did not engage any mechanical component of the vehicle.

Code § 18.2-266 states, in part, that "[i]t shall be unlawful for any person to drive or operate any motor vehicle . . . while such person is under the influence of alcohol."  As the Supreme Court has noted:  "It seems clear that driving an automobile means putting in motion; but it seems equally clear that unless it was intended that [§ 18.2-266] should cover an activity in addition to driving, the word 'operate' is useless baggage and serves no purpose."  Gallagher v. Commonwealth, 205 Va. 666, 668-69, 139 S.E.2d 37, 39 (1964).  Code § 46.2-100 defines "an operator" as one who "drives or is in actual physical control of a motor vehicle on a highway."  For over forty years, the Virginia courts have used this definition of "operator" in the Motor Vehicle Code to determine guilt under the DUI statute.[2]

---

[2] Although the definition of "operator" in Code § 46.2-100 is not explicitly referenced in the DUI statute, this Court has opined that it "serves as a valuable interpretative guide to the DUI statute."  Dugger v. Commonwealth, 40 Va. App. 586, 592, 580 S.E.2d 477, 480 (2003).  In

It is undisputed that Rix did not put the vehicle in motion so as to drive it. Thus, the question before us is whether she was in "physical control" of the vehicle so as to operate it. Although "an accused's presence in or about a motor vehicle when arrested is insufficient, standing alone, to prove that the accused had 'actual physical control' of the motor vehicle," physical control may be shown by the accused's presence "coupled with some other contemporaneous circumstance." Leake v. Commonwealth, 27 Va. App. 101, 107, 497 S.E.2d 522, 525 (1998). Such other circumstances include "'starting the engine, or manipulating the mechanical or electrical equipment of the vehicle without actually putting the car in motion . . . [or] engaging the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle.'" Id. (quoting Williams v. City of Petersburg, 216 Va. 297, 300, 217 S.E.2d 893, 896 (1975)). These examples are not exclusive as neither this Court nor the Supreme Court has established any bright line rules regarding the requirements for establishing physical control of a vehicle. See Propst v. Commonwealth, 24 Va. App. 791, 794, 485 S.E.2d 657, 659 (1997).[3] Indeed, physical control has been shown where defendants were found merely seated behind the steering wheel with the engine running. See, e.g., Nicolls v. Commonwealth, 212 Va. 257, 258, 184 S.E.2d 9, 10 (1971) (defendant "was 'slumped' over the steering wheel and his hands were 'hanging down'"); Ngomondjami v. Commonwealth, 54 Va. App. 310,

---

addition, the Supreme Court "approved this definition for the purpose of determining whether one 'operates' a motor vehicle within the meaning of [the DUI statute]" over forty years ago. Nicolls v. Commonwealth, 212 Va. 257, 259, 184 S.E.2d 9, 11 (1971) (citing Gallagher, 205 Va. at 668, 139 S.E.2d at 39). While other state legislatures have enacted provisions within their DUI statutes that require something more than actual physical control of a vehicle for a conviction of DUI, see, e.g., Ga. Code § 40-6-391 (prohibiting a person from driving or being in actual physical control of "any moving vehicle" while under the influence) and Wis. Code § 346.63 (DUI statute defining "operate" as "physical manipulation or activation" of controls of a vehicle "necessary to put it in motion"), the Virginia General Assembly has not done so.

[3] Though the presence of one or more of these facts may tend to establish physical control, it is a *non sequitur* to conclude, as Rix does, that physical control cannot be shown absent the presence of one or more of these facts.

- 3 -

314-15, 678 S.E.2d 281, 283 (2009) (defendant found "unconscious, reclined in the driver's seat of a car with its engine running in a school parking lot"); compare Stevenson v. City of Falls Church, 243 Va. 434, 416 S.E.2d 435 (1992) (defendant not operating vehicle where he was found asleep behind steering wheel, engine was not running, and ignition key was in "off" position).

Although we have not addressed a case in which a passenger switched seats with the driver during a traffic stop, a panel of this Court held in Dugger that a passenger seized physical control of a vehicle from the driver when the passenger placed his hands on the steering wheel of a moving vehicle and steered the vehicle off the roadway. As the Court explained, "the mischief addressed by the DUI statute is the risk of harm posed by vehicles under the control of intoxicated individuals. Whether that risk comes from an inebriated passenger (who forcibly takes control of the steering wheel) or from a drunk driver should not matter." Dugger, 40 Va. App. at 593, 580 S.E.2d at 481. The Court concluded the passenger's "deliberate act" in taking the steering over from the driver "placed him in actual physical control of the vehicle." Id. at 594, 580 S.E.2d at 481.

In this case, Rix seized actual physical control of the vehicle when she switched seats with Stoilova in an effort to represent herself as the operator of the vehicle. By the time Officer Womble reached the vehicle, Rix was seated behind the steering wheel, the keys were in the ignition, and the engine was running. Although there is no evidence Rix placed her hands on the steering wheel, put the vehicle in motion, or otherwise engaged the machinery of the vehicle, she purposely moved into the driver's seat and permitted the engine to continue to

run.[4]  In doing so, Rix "was keeping the car in restraint or in position to regulate its

movements."  State v. Ruona, 321 P.2d 615, 618 (Mont. 1958).

> Preventing a car from moving is as much control and dominion as
> actually putting the car in motion on the highway.  Could one
> exercise any more regulation over a thing, while bodily present,
> than prevention of movement or curbing movement.  As long as
> one were physically or bodily able to assert dominion, in the sense
> of movement, then he has as much control over an object as he
> would if he were actually driving the vehicle.

Id.  We find these facts supplied the "other contemporaneous circumstance[s]" to prove Rix was

in "actual physical control" of the vehicle.  Leake, 27 Va. App. at 107, 497 S.E.2d at 525.[5]

----

[4] When a person is seated behind the steering wheel in the driver's seat, we see no difference between starting the vehicle's engine and allowing an already engaged engine to continue to run for purposes of determining physical control.  See, e.g., State v. Webb, 274 P.2d 338, 340 (Ariz. 1954) (Though when apprehended defendant "may have been exercising no conscious volition with regard to the vehicle, still there is a legitimate inference to be drawn that defendant had of his own choice placed himself behind the wheel thereof, and had either started the motor or permitted it to run" and "therefore had the 'actual physical control' of that vehicle, even though the manner in which such control was exercised resulted in the vehicle's remaining motionless at the time of his apprehension."); see also State v. Godfrey, 400 A.2d 1026, 1026 (Vt. 1979) (Despite "no evidence [defendant] was touching any mechanism by which the vehicle could be controlled," "[b]eing behind the driver's seat with the motor running is, in our view, being in actual physical control."); State v. Ruona, 321 P.2d 615, 618 (Mont. 1958) ("[O]ne could have 'actual physical control' while merely parking or standing still so long as one was keeping the car in restraint or in position to regulate its movements."); Diehl v. State, 975 S.W.2d 878, 879-80 (Ark. Ct. App. 1998) (Where "appellant was slumped over in the driver's seat of the car with his legs under the steering wheel, at which time the keys were in the ignition with the motor running," the court had "no hesitancy in holding that the appellant was in actual physical control of the vehicle."); People v. Khan, 182 Misc. 2d 83, 84 (N.Y. App. Term 1997) ("An established line of authority in New York and elsewhere holds that for purposes of offenses for driving while intoxicated . . . operation of the vehicle is established on proof that the defendant was merely behind the wheel with the engine running."); City of Kansas City v. Troutner, 544 S.W.2d 295, 300 (Mo. Ct. App. 1976) ("[A]ctual physical control of a vehicle results, even though the machine merely stands motionless, so long as a person keeps the vehicle in restraint or in a position to regulate its movements."); Rose v. State, 345 N.E.2d 257, 261 (Ind. Ct. App. 1976) (Evidence that defendant was in control of a running automobile stopped on a highway was sufficient to prove he operated the vehicle.).

[5] We reject the contention by Rix that physical control requires, in all cases, manipulation of the mechanical or electrical equipment of the vehicle by defendant.  Under application of such a rule, although Rix would not have been in physical control of the vehicle as she was sitting behind the steering wheel with the engine running, she would have been in

Accordingly, it was reasonable for the trial court to conclude Rix was "operating" the vehicle within the meaning of Code § 18.2-266.[6]

For these reasons, we affirm the judgment of the trial court.

Affirmed.

---

physical control of the vehicle had she simply placed her foot on the brake pedal, turned the ignition key off, or made any slight motion to disengage the machinery or stop the movement of the vehicle. Such an arbitrary distinction defies logic and frustrates the goal of protecting the public from the danger of an intoxicated individual seated behind the steering wheel of a running motor vehicle. Furthermore, "[c]arried to its logical conclusion, the defendant's argument would free [her] from liability if, seated at the controls of a car careening down the highway, [s]he did not touch any of the controls." Godfrey, 400 A.2d at 1027. It is true the Supreme Court has held an occupant was in physical control "when he was seated behind the steering wheel *and* performed certain acts." Stevenson, 243 Va. at 437, 416 S.E.2d at 437 (citing Williams, Nicolls, and Gallagher). But none of those cases involved an occupant who intentionally placed himself behind the steering wheel of a vehicle after the engine was already running. Extrapolating from that statement a bright line rule requiring an occupant to manipulate the equipment of the vehicle would lead to the absurd result in this case that neither occupant of the vehicle was in physical control. The possibility of such a result aptly illustrates the wisdom of determining the issue of physical control by examining the facts and circumstances of each case rather than through application of a bright line rule.

[6] Although Rix also argues the evidence was insufficient to support her conviction for refusal to take a blood or breath test because she was not operating the vehicle within the meaning of the DUI statute, she did not brief this issue. See Rule 5A:20(e) (requiring the appellant's brief to include, among other things, "principles of law, the argument, and the authorities relating to each question presented"). Nevertheless, our holding makes it unnecessary to address this issue.