# COURT OF APPEALS OF VIRGINIA

## Record No. 1815-24-3

BILLY FERNANDES RAY

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Ortiz, Causey and Callins

Argued at Lexington, Virginia

Opinion Issued April 21, 2026[*]

## FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
### Edward K. Stein, Judge

James V. Doss, III, for appellant.

Melanie D. Edge, Assistant Attorney General (Jason S. Miyares, Attorney General,[1] on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE DORIS HENDERSON CAUSEY

Following a bench trial, the circuit court found Billy Fernandes Ray guilty of driving a motor vehicle while under the influence of alcohol, third offense within ten years; driving a motor vehicle while license revoked for a prior DUI conviction and while under the influence of alcohol; and driving a motor vehicle while deprived of the right to do so for a DUI offense. Ray appealed, arguing the circuit court abused its discretion when it denied his motion to strike, as there was insufficient evidence to prove, beyond a reasonable doubt, that Ray actively operated his vehicle while intoxicated. We agree and reverse Ray's convictions under Code § 18.2-266 and Code § 46.2-391(D)(2)(a).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND

On March 14, 2024, the Clifton Falls Police Department received a call from a woman reporting that her husband had been drinking and that she was trying to stop him from leaving the residence. When an officer arrived at the house, her husband was gone. But the woman informed the officer that her husband had left in a black Nissan Maxima and may be heading to Covington.[2] The officer also learned the vehicle's registration number. The Clifton Falls Police Department then issued a Be On the Lookout (BOLO) for the vehicle, noting the subject might be at the Travel Lodge[3] in Low Moor.

Upon receiving the BOLO, shortly before midnight, Alleghany County Deputy Sheriff William Clark went to the Travel Lodge. Fifteen minutes after he arrived, Deputy Clark found a vehicle matching the BOLO description. When Deputy Clark approached the vehicle, he found Ray as the sole occupant of the vehicle, lying in the reclined driver's seat. The car had a simple push button start, and the engine was not running.

Deputy Clark introduced himself and told Ray that his vehicle matched the BOLO vehicle description for a suspect in a "domestic in Clifton Forge." He then asked Ray to produce some identification. Ray had difficulty locating his documentation but eventually gave the deputy his Virginia identification card. Ray did not produce a driver's license. In addressing his license, Ray stated that he knew he "fucked up." Deputy Clark testified that he understood Ray to be saying that he knew that he did not have a license to drive. Ray also admitted that he "drove there" at some point that day, though he did not specify when.

---

[2] Ray's wife did not testify at his trial.

[3] In the trial transcript, the court reporter spelled the name of the motel, Travelodge, as "Travel Lodge." We have referenced it throughout based on its name in the transcript.

Directly behind Ray's driver's seat were several unopened alcoholic beverage containers. Ray told Deputy Clark that he "had been drinking a few hours ago." While speaking with the officer, Ray slurred his speech, and an odor of alcohol emanated from his car. Suspecting that Ray was drunk, Deputy Clark asked Ray to perform field sobriety tests. The results of these tests further indicated that Ray was under the influence of alcohol. Deputy Clark then administered a preliminary breath test (a breathalyzer), which confirmed the deputy's suspicions that Ray was intoxicated. Throughout the encounter, Ray never stated he had been drinking while sitting in his vehicle.

Deputy Clark arrested Ray and transported him to the local jail. At the jail, Deputy Clark tried to obtain a breath sample from Ray, but he refused, stating, "I ain't doing shit, man, just lock me in the room. I'm not doing nothing for you." Deputy Clark then read the entire declaration and acknowledgement of refusal form to Ray; he again refused to provide a breath sample.

Based on his investigation, Deputy Clark obtained felony warrants charging Ray with DUI, third offense within ten years, in violation of Code §§ 18.2-266 and 18.2-270, and driving a motor vehicle while license revoked for a prior DUI conviction, in violation of Code § 46.2-391. Deputy Clark also obtained Class 1 misdemeanor warrants charging Ray with driving a motor vehicle while deprived of the right to do so for a DUI offense, in violation of Code § 18.2-272(A)(i), and unreasonably refusing to submit a breath sample for chemical analysis, subsequent offense, in violation of Code § 18.2-268.3.

On August 27, 2024, Ray waived a jury trial, entered pleas of not guilty to all four charges, and proceeded to trial. During cross examination, Deputy Clark testified that there was "nothing inherently illegal" about being intoxicated and sleeping in a vehicle "if the car [is not]

on." Also, without objection, Deputy Clark testified that he "never saw [Ray] drive or operate a motor vehicle."

At the close of the Commonwealth's case in chief, Ray moved to strike the evidence. As to the felony charge of driving a motor vehicle while license revoked for a prior DUI conviction and the misdemeanor charge of unreasonably refusing to submit a breath sample for chemical analysis, Ray argued that the Commonwealth failed to prove that he drove on a public highway. He noted that Deputy Clark only saw him parked in the parking lot, and he contended that his admission of driving earlier did not establish *when* he drove.

As to the felony DUI charge, Ray conceded that the field sobriety tests provided "some inference of intoxication" but argued that the Commonwealth failed to prove "when this intoxication occur[red]." Asserting that his car was "unequivocally off" in the parking lot, he also argued that "there [was] no evidence of operation on the scene." In addition, noting that neither the officer at the scene nor the Commonwealth at trial asked him to "pin down" how long he had been in the parking lot, Ray contended that the there was "no evidence of when the drinking or driving behavior occurred." He pointed out that there was "no evidence as to when the BOLO or the underlying event occurred," so the only evidence of his driving of a motor vehicle was his admission that he "drove here." Thus, as to the misdemeanor charge of unreasonably refusing to submit a breath sample, he argued that the Commonwealth failed to prove that he was arrested within three hours of his driving behavior, thereby failing to prove applicability of Virginia's implied consent law requiring him to submit to a chemical test for determining his blood alcohol concentration at the time of driving.

Finally, as to the felony charge of driving while license revoked for a prior DUI and the misdemeanor charge of driving a motor vehicle while deprived of the right to do so for a DUI

offense, Ray argued that he could not be convicted of both offenses.  He therefore asked the circuit court to dismiss one of them.

The circuit court overruled Ray's motion on all counts, explaining its decision by stating only that it was "taking all of the evidence in the light most favorable to the Commonwealth, together with all inferences reasonably flowing therefrom."  Ray presented no evidence and renewed his motion to strike.  While noting Deputy Clark testified that he found Ray within 15 minutes of receiving the BOLO, the circuit court found that there was "no real evidence about how long it was" before the BOLO was issued and the domestic situation occurred.  It thus found that the Commonwealth had failed to establish "when [Ray] was operating a motor vehicle," and, without evidence of the time of his driving, it "need[ed] to find [Ray] not guilty with regard to the refusal charge."  Accordingly, the circuit court granted Ray's motion to strike as to that charge.

Ray then argued that the same logic applied to the DUI charge and the felony charge of driving on a revoked license, but the circuit court disagreed.  The circuit court said that it "ha[d] no problem finding that [Ray] drove from Clifton Forge to Low Moor on the public highway."  Nevertheless, because "[there was] no evidence of when he drove there," Ray suggested "a reasonable hypothesis of innocence . . . that he drove there and at some point became intoxicated while . . . sitting in [his parked vehicle] with his beers in the back seat."  He asserted that "[t]he crucial missing link" would involve establishing when he departed, and "that evidence [was] not before the [c]ourt."  Ray conceded, however, that the Commonwealth had "made out a case" for a misdemeanor offense under Code § 46.2-391(D) if the circuit court found that he was driving and "just driving would be an issue."

Without explicitly denying Ray's renewed motion to strike, the circuit court found that Ray was guilty of DUI third offense within five years, driving a motor vehicle while license

revoked for a prior DUI conviction and while under the influence of alcohol, and driving a motor vehicle while deprived of the right to do so for a DUI offense. It explained that, "given the evidence as a whole, given [Ray's] statements, given the fact that the only evidence was that any containers in the vehicle were unopened and the totality of the circumstances," the court was convinced of Ray's guilt beyond a reasonable doubt.

For the DUI, third offense within 10 years, the circuit court sentenced Ray to 2 years in prison with 1 year 9 months suspended. It also imposed the mandatory minimum fine of $1,000 and indefinitely suspended his driver's license. For driving a motor vehicle while license revoked for a prior DUI conviction and while under the influence of alcohol, the circuit court sentenced Ray to 12 months in jail. Lastly, for driving a motor vehicle while deprived of the right to do so for a DUI offense, the circuit court sentenced Ray to 30 days in jail and suspended all 30 days.

This appeal follows.

## ANALYSIS

### I. Standard of Review

Motions to strike—whether made initially or renewed—are challenges to the sufficiency of the evidence. *SuperValu, Inc. v. Johnson*, 276 Va. 356, 369 (2008). When faced with a challenge to the sufficiency of the evidence, we must presume the trial court was correct and reverse "only if the trial court's decision is 'plainly wrong or without evidence' to support it." *Crowder v. Commonwealth*, 41 Va. App. 658, 662 (2003) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). In determining whether a trial court's judgment was

plainly wrong or unsupported, we must view "the evidence in the light most favorable to the Commonwealth, as 'the prevailing party in the trial court.'" *Cornelius v. Commonwealth*, 80 Va. App. 29, 34 n.2 (2024) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 624 (2019)).

We must then ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Kelly*, 41 Va. App. at 257 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A rational factfinder can reject a purported hypothesis of innocence as unreasonable if the evidence does not support it. *See Case v. Commonwealth*, 63 Va. App. 14, 23 (2014). "'[T]he factfinder ultimately remains responsible for weighing the evidence,' and the factfinder is the one who 'determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypothesis of innocence advanced by a defendant.'" *Commonwealth v. Wilkerson*, 304 Va. 92, 102-03 (2025) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). "Our inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Moseley*, 293 Va. at 463 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)); *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017). "[W]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion" of guilt. *Williams v. Commonwealth*, 71 Va. App. 462, 484-85 (2020) (alterations in original).

*II. Driving Under the Influence Pursuant to Code § 18.2-266*

Code § 18.2-266 makes it "unlawful for any person to drive or operate any motor vehicle . . . while such person is under the influence of alcohol." The statute requires the Commonwealth prove that a defendant "drive or operate [a] motor vehicle" while under the influence. Ray argues that no rational factfinder could have found these elements of

Code § 18.2-266 beyond a reasonable doubt because there was no proof in the record that Ray

operated the vehicle *while* he was actively intoxicated.[4] We agree.

A. Under the Influence

The Commonwealth bears the burden of proving Ray was driving or operating the

vehicle under the influence of alcohol or other intoxicants. *See, e.g., Lambert v. Commonwealth*,

70 Va. App. 54, 65 (2019). For purposes of the statute, a person is under the influence of alcohol

when he drinks "enough alcoholic beverages to observably affect his manner, disposition,

speech, muscular movement, general appearance or behavior." *See Leake v. Commonwealth*, 27

Va. App. 101, 110 (1998) (applying the definition of intoxication in Code § 4.1-100 to Code

§ 18.2-266). Without chemical testing, this element may be proved by considering "all of the

evidence of [the accused's] condition at the time of the alleged offense." *Beckham v.*

*Commonwealth*, 67 Va. App. 654, 662 (2017) (quoting *Leake*, 27 Va. App. at 109). The

Commonwealth's evidence must exclude every reasonable hypothesis of innocence. *Park v.*

*Commonwealth*, 74 Va. App. 635, 654 (2022); *Case*, 63 Va. App. at 22.[5]

---

[4] In interpreting Rule 5A:12(c), the Supreme Court has recognized that an assignment of error need only identify the ruling at issue with such specificity that it "puts the court and opposing counsel on notice" as to the ruling that the appellant believes to be erroneous. *See Findlay v. Commonwealth*, 287 Va. 111, 116 (2014). While his appellate counsel's briefs left much to be desired, because Ray sufficiently alleges that the trial court erred in not granting his motions to strike the evidence as insufficient for his convictions, we address the merits of these assignments of error.

[5] To the extent Ray further argues that, because the Travel Lodge parking lot was private property, he could not be convicted under Code § 18.2-266, we find no error. Virginia courts have long held that "Code § 18.2-266 contains no 'on a highway' requirement for the operation of motor vehicles." *Sarafin v. Commonwealth*, 288 Va. 320, 328 (2014). Additionally, public ownership of the property is not a required element the Commonwealth must prove under Code § 18.2-266. *Mitchell v. Commonwealth*, 26 Va. App. 27, 35-36 (1997). Thus, a defendant can be convicted of drunk driving in a private parking lot. *Gray v. Commonwealth*, 23 Va. App. 351, 352-53 (1996).

In Ray's case, the Commonwealth hangs its hat on the fact that Ray had unopened beer cans in his backseat and smelled of alcohol. However, the question is whether Ray operated his vehicle *while* intoxicated.

B. To Operate a Motor Vehicle

To "operate" means to be "in actual physical control of a vehicle," *Sarafin*, 288 Va. at 326 (quoting *Enriquez v. Commonwealth*, 283 Va. 511, 516 (2012)), and is "not limited to the movement of the vehicle." *Nicolls v. Commonwealth*, 212 Va. 257, 259 (1971). Meaning one can be in control of a vehicle when they "engag[e] the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle," including "[m]anipulating the electrical equipment." *Sarafin*, 288 Va. at 326 (quoting *Nelson v. Commonwealth*, 281 Va. 212, 219 (2011)).

Here, there is no proof that Ray was operating a motor vehicle. While being in the driver's seat is sufficient to support a conviction if the vehicle is running or its electrical equipment is on, Ray's vehicle was completely off. Deputy Clark acknowledged that Ray was "legally parked," backed into a parking space. The engine was not running. There is no evidence that the hood of his vehicle was hot. The electrical equipment was not engaged. His headlights were off. Ray was asleep with his shoes off when the deputies approached him. And it is unclear from the record when he arrived in the Travel Lodge parking lot. The circuit court found that there was "no real evidence about how long it was" before the BOLO was issued and the domestic situation occurred and found, as a matter of fact, that the Commonwealth had failed to establish "when [Ray] was operating a motor vehicle."

C. Ray's Reasonable Hypothesis of Innocence

Ray suggested as a reasonable hypothesis of innocence that he became intoxicated only after he arrived at the Travel Lodge parking lot. Both parties concede that Ray was drunk when

Deputy Clark approached him. However, the record does not establish *when* Ray became intoxicated or whether Ray drove his vehicle *after* he became intoxicated.

While Ray admitted to Deputy Clark that he drove himself to the Travel Lodge at some point that same day, the court found no evidence in the record establishing what time he drove there in relation to the time that he drank alcohol. Police did not see Ray driving the car. Neither did any eyewitnesses. He had done nothing to suggest he was driving under the influence. For instance, he was not parked erratically, and none of the vehicle's doors were opened or otherwise suspiciously situated. In fact, the only reason officers knew to investigate Ray's Nissan Maxima, which was otherwise inconspicuously parked in the motel parking lot, is because of the BOLO describing it—not because of any erratic behavior by Ray. And while the circuit court found, as a matter of fact, that it took deputies fifteen minutes after the BOLO was issued to locate Ray's Nissan Maxima in the parking lot, the record does not establish how much time elapsed between the 911 dispatch call and the BOLO being published.

Without any showing that the car had been recently driven—such as a warm-to-the-touch engine, a timestamp of Ray's wife's 911 call, or an eyewitness who saw Ray driving—the record does not provide sufficient evidence to show that Ray was operating his vehicle while intoxicated.

Ray's circumstances differ from the cases cited by the parties on brief. The Commonwealth relies on *Nunez v. Commonwealth*, No. 0008-21-4, 2022 Va. App. LEXIS 250 (June 21, 2022). There, a defendant was asleep in a car when a passerby reported a suspicious vehicle. *Id.*, slip op. at 2, 2022 Va. App. LEXIS 250, at *2. Police found Nunez's car parked with two tires on the sidewalk and two tires in the street. *Id.* After approaching, the officer observed that the car's engine was off and smelled an odor of alcoholic beverage coming from the vehicle. *Id.*, slip op. at 2-3, 2022 Va. App. LEXIS 250, at *2-3. The officer testified at trial

that Nunez admitted he was driving home, telling the officer, "I'll be honest with you. I fucked up. I fucked up." *Id.*, slip op. at 2-3, 2022 Va. App. LEXIS 250, at *3. Nunez then failed his field sobriety and breathalyzer tests. *Id.*

This Court rejected Nunez' reasonable hypothesis of innocence—that he was not intoxicated at the time he actually drove there—because (1) Nunez did not dispute that he was intoxicated when the officer encountered him, (2) the hood of his car was warm and his gearshift was in drive, (3) his headlights, dashboard, and radio lights were all on, (4) Nunez acknowledged his guilt, and (5) no beverage containers were observed in the car. *Id.*, slip op. at 6-7, 2022 Va. App. LEXIS 250, at *8-9. We wrote, "Nunez produced no evidence related to the timing of his alcohol consumption and intoxication. Therefore, the trial court was permitted to infer that Nunez was under the influence of alcohol at the time he was driving." *Id.*, slip op. at 7, 2022 Va. App. LEXIS 250, at *10 (citing *Taylor v. Commonwealth*, 70 Va. App. 182, 192 (2019)).

Here, unlike *Nunez*, (1) no eyewitness reported Ray's Nissan Maxima for suspicious behavior, (2) Ray's gearshift was not in the drive position, (3) Ray's headlights and radio were off, and (4) there is nothing in the record that indicates the officer checked the hood of Ray's car to see if it was still warm, a commonly utilized police tactic to see if the engine had recently been running. Ray was also properly parked in a parking spot, unlike Nunez, who parked haphazardly, suggesting Nunez was drunk when he parked his car. And unlike in *Nunez*, Deputy Clark testified that, when Ray said he "fucked up," Ray was acknowledging that he drove with a suspended license, not that he drove or operated the vehicle while he was drunk.

Similarly to *Nunez*, none of the beer cans in Ray's car were opened, and there was no other evidence of empty cans or alcohol in or around the car—meaning he likely got drunk before he got into his car. However, there is no affirmative evidence that suggests he did not get drunk inside the Travel Lodge, or another nearby establishment, and then came back to his car.

- 11 -

Therefore, there is a crucial missing link, as the time that Ray departed his home was not evidence before the circuit court.

The only evidence of Ray driving or operating a motor vehicle was testimony—from Deputy Clark; Ray's wife did not testify—about the BOLO dispatch that went out sometime after Ray's wife called 911. But importantly, the record does not indicate when Ray's wife called to report him. It is unclear if she called immediately after Ray left his home. It is also unclear how much time elapsed between his wife calling 911 and when the BOLO was published.

In this Court's most recent DUI case, we found sufficient evidence to sustain a DUI conviction when the defendant fumbled with unlocking the door, struggled to produce his driver's license, had a "strong odor" of alcohol and "glossy" eyes, and slurred his speech. *Peralta v. Commonwealth*, No. 0873-23-4, slip op. at 2, 2024 Va. App. LEXIS 316, at *2 (June 4, 2024). However, the defendant was found sleeping in the driver's seat, with his car in drive with its engine on, while stopped at a traffic light, and the defendant failed to drive onward when the light turned green. *Id.*

The circumstances of *Peralta* are drastically different than those in Ray's case. Ray was not obviously driving in the middle of the street. He was safely, "legally parked" in the Travel Lodge parking lot, with his car's electrical equipment and engine off.

Ultimately, no "rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016). Neither Deputy Clark nor anyone else witnessed him driving the car, and it was uncontroverted that the black Nissan Maxima described in the BOLO dispatch was not being operated when deputies approached Ray, as it was "legally parked" at the Travel Lodge parking lot. The record does not establish whether the hood of his car was warm. It is necessary for the Commonwealth to prove beyond a reasonable doubt that the only possible explanation of how a

vehicle came to be where it was found is that Ray drove it there *while* he was legally intoxicated. But the Commonwealth did not prove when Ray drove or when he was operating the vehicle. The circuit court found that there was no indication of the time between the 911 call and the BOLO, and there was no evidence of Ray's intoxication while driving. Ray was sitting in his vehicle with its motor off and none of its electrical mechanics turned on. The Commonwealth failed to prove that Ray drove or operated the vehicle while intoxicated. Therefore, there was insufficient evidence to convict Ray.[6]

### III. Driving a Vehicle After Revocation of a License Pursuant to Code § 46.2-391

Ray was erroneously sentenced under Code § 46.2-391 because he had simultaneously been found in violation of Code § 18.2-266. Code §§ 46.2-391(A) and (B) allows for the revocation of a person's license if they have been convicted for two or more DUI offenses. Code § 46.2-391(D)(2)(a) makes it a felony for a defendant to drive under the influence, while their license is revoked, in a way that either (i) "endanger[ed] the life, limb, or property of another" or (ii) while in violation of Code § 18.2-266.

As explained above, because the Commonwealth failed to prove beyond a reasonable doubt that Ray operated his vehicle while he was intoxicated, it also failed to prove all the elements of Code § 46.2-391. Ray was not driving in a way that would have endangered anyone. He was not in violation of Code § 18.2-266. He was sitting in his vehicle with its motor off and none of its electrical mechanics turned on. Therefore, Ray's conviction under Code § 46.2-391 was plainly wrong and without evidence to support it.

---

[6] We decline the opportunity to decide Ray's third assignment of error as the "doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). Ray waived his fourth assignment of error by (1) presenting no standard of review and no argument "including principles of law and authorities," as required by Rule 5A:20(e), and (2) failing to object below, as required by Rule 5A:18.

*IV. Driving a Vehicle After Revocation of a License Pursuant to Code § 18.2-272*

Lastly, Ray challenges his conviction under Code § 18.2-272. Code § 18.2-272(A)(i) makes it a misdemeanor to operate a vehicle on "any highway" after a defendant's license has been revoked due to a subsequent violation of Code § 18.2-266. The misdemeanor statute requires proof that the defendant drove or operated a motor vehicle while their license was revoked or suspended. *Id.* It also requires the Commonwealth to prove the defendant has prior DUI convictions under Code § 18.2-266. *Id.*

The relevant definitions section, under Code § 18.2-272, defines "highway" as "the entire width between the boundary lines of every *way or place open to the use of the public* for purposes of vehicular travel in the Commonwealth, including the streets and alleys . . . ." Code § 46.2-100 (emphasis added). In the DUI case relied on by Ray, *Villareal v. Commonwealth*, No. 0764-12-2, slip op. at 4-5, 2013 Va. App. LEXIS 150, at *7-8 (May 14, 2013), we held that a strip mall parking lot did not constitute a "highway" within the meaning of the Code. This is a longstanding rule in Virginia. *See Roberts v. Commonwealth*, 28 Va. App. 401, 403 (1998); *Edwards v. City of Virginia Beach*, No. 2751-00-1, slip op. at 4-5, 2001 Va. App. LEXIS 522, at *6 (Sept. 25, 2001).

Ray does not contest his prior DUI convictions nor the fact that he drove himself to the Travel Lodge sometime that same day. Therefore, Ray's argument challenging his misdemeanor conviction under Code § 18.2-272(A)(i) treads no water.

CONCLUSION

We reverse the circuit court's judgment as to Ray's convictions for driving under the influence of alcohol, third offense, under § 18.2-266, because the evidence was not sufficient for a rational trier of fact to find that he was guilty of driving a motor vehicle on a highway on March 14, 2024. We similarly reverse his conviction under Code § 46.2-391(D)(2)(a), as the

- 14 -

Commonwealth failed to prove that Ray drove or operated his vehicle in a way that "endanger[ed] the life, limb, or property of another" or while in violation of Code § 18.2-266. We affirm his misdemeanor convictions under Code § 272(A)(i), as Ray admitted he drove to the Travel Lodge during a period when his license was revoked.

*Affirmed in part and reversed in part.*