## Richmond

### Charles James Meekins v. C. C. Peyton, Superintendent of The Virginia State Penitentiary.

June 12, 1967.

Record No. 6405.

Present, All the Justices.

*William King Mapp* (*Mapp & Mapp*, on brief), for plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

Snead, J., delivered the opinion of the court.

Charles James Meekins, petitioner, appealed from an order of the Circuit Court of Accomack County wherein his petition for a writ

of *habeas corpus ad subjiciendum* filed against C. C. Peyton, Superintendent of the Virginia State Penitentiary, respondent, was denied and dismissed.

At the time Meekins filed his petition, he was being detained by respondent pursuant to a judgment order of the Circuit Court of Accomack County entered October 15, 1963, whereby he was sentenced to the penitentiary for a term of 20 years upon a conviction of armed robbery.

A plenary hearing on the petition was had on May 20, 1965..The trial court held that Meekins was "ably, competently and effectively represented" by his court-appointed attorney during his trial for robbery; that he "freely and voluntarily" admitted his participation in the crime, and that he was "fully advised as to his constitutional rights prior to making a written statement".

In his assignments of error, Meekins contends that the court erred (1) in holding that he freely and voluntarily admitted to participation in the robbery, and that he was fully advised of his constitutional rights before making a written statement; (2) in denying and dismissing his petition, and (3) in failing to hold that he was denied due process of law and the equal protection of the law, which resulted in his conviction.

The thrust of Meekins' argument centers on the question of whether his confession was voluntary. He claims that the evidence shows that it was not voluntarily made, and that as a consequence of its admission in evidence his conviction is void.

As will be hereinafter noted, the evidence adduced at the hearing was conflicting in many respects.

The record shows that on August 7, 1963, four men participated in the armed robbery of Hugh Nat Mears, assistant cashier of Eastern Shore Citizens Bank located in Accomack county. Cash in the amount of $13,928 belonging to the bank was taken. Shortly after the robbery three of the men were apprehended. We are told that all of the money was recovered. The fourth man escaped.

Subsequently, Meekins was arrested for "unlawful flight" in Washington, D. C. by an agent of the Federal Bureau of Investigation. On September 25, 1963, following an extradition hearing in the United States District Court in Washington, petitioner was released to Virginia State Trooper D. L. Ross, R. Norris Bloxom, Commonwealth's attorney for Accomack county, and two deputy sheriffs, who transported him in their automobile to the Accomack jail. According to

Meekins he waived extradition, but Bloxom and Ross said that he did not.

Meekins testified that while in the automobile on the trip to Accomack, Bloxom "axed me did I know the Virginia law carried a death penalty for bank robbery * * *", and told him that "three fellows that was with me had signed a statement saying I was involved with them in the robbery." Petitioner stated that Bloxom was the only person who questioned him concerning the robbery during the trip; that he had not been advised of his constitutional rights, and that he told Bloxom "I didn't know anything about it" and denied taking any part in the robbery. Upon arrival at the Accomack county jail on the night of September 25, petitioner was incarcerated.

The next morning, Meekins said, Bloxom, the Commonwealth's attorney, interrogated him again without advising him of his constitutional rights. He told Bloxom that he was not guilty of the crime. Just before departing, Bloxom said "If I changed my mind to let him know, and I could get in contact with him." Petitioner stated that he asked Bloxom for counsel and was informed that the court would appoint an attorney for him.

Meekins testified that later on the same day Trooper Ross also visited him at the jail to take his finger prints. According to petitioner, Ross told him that he could make a statement if he so desired, "and then Mr. Ross advised me of my constitutional rights." On cross-examination Meekins stated that he was not advised of such rights until "after the statement was written out." He said that Ross exhibited to him the statements made by the other defendants which he read; that he gave Ross a statement which he now says was untrue; that he confessed because Bloxom had told him that "Virginia laws carries a death penalty for a bank robbery, and I didn't want to go to the chair, you know, for something I didn't do, and he said, if I pleaded guilty, he would ask the Judge to give me twenty years, but facing a jury, * * * I would probably be convicted anyway and get more, * * *". Petitioner further testified that if he did not confess, he was afraid that he would be sentenced to the electric chair.

Meekins also stated that he first met his court-appointed attorney, L. Franklin Davis, five minutes before his preliminary hearing in the County Court and told him that he was not guilty of the robbery. He stated that when he asked Davis about obtaining witnesses from Washington to testify in his behalf, Davis told him "that to subpoena witnesses would take money, and axed did I have any, you know.

He axed was there any way possible I could get some money, and I told him no, and he said leave it to him, and we went in the Court Room, and, before I could say anything, Mr. Davis pleaded [me] guilty * * *." The case was certified to the grand jury and he was subsequently indicted for the crime.

Petitioner further testified that Davis told him that the guilty plea was entered in the County Court "so he could hurry up and get it to the big court and have a trial." Thereafter, petitioner asserted that Davis saw him two or three times before trial in the Circuit Court to inquire whether he had received any money but did not discuss the case. He stated that Davis told him that "if I would enter a plea of guilty, he would put in a word, and I would get off with maybe twenty years, and if I didn't, I would get more." At the trial petitioner pleaded guilty to the indictment, he said, because of his "fear of death", and his signed confession was read to the court.

Norris Bloxom, Commonwealth's attorney, testified that Meekins' "first conversation on the way out of Washington, I remember very well. He said, I guess this will be the last time I see this town for a long time. He tried to get us to take him by the home of his parents, and then he started talking about what happened here. That was before any questions were asked at all." He said that Meekins "voluntarily made the statement practically as it appears in his written statement. That was before any questions were asked. After that, questions were asked with reference to specific details." Meekins did not ask for the assistance of counsel.

Bloxom did not recall whether anything was said regarding the death penalty for bank robbery. He gave petitioner no opinion as to what disposition would be made of his case. Bloxom said that he requested the judge to appoint counsel for Meekins, and that he had informed Davis of such appointment prior to the date of the hearing in the County Court. In discussing the case with Davis after petitioner had been indicted, he did say that he would recommend to the court a sentence of 20 years upon a plea of guilty.

According to Trooper Ross, the trip from Washington, D. C. to Accomack consumed about three and one-half hours. Petitioner and the other occupants of the vehicle "talked back and forth" and most of the conversation concerned the bank robbery. Meekins admitted participation in the robbery. Ross said that either he or Bloxom did mention the death penalty; that he saw Meekins leave the car occupied by the robbers and escape; that before Meekins made the statement in question he advised petitioner of his constitutional rights,

and that no mention was made of the electric chair. Ross was asked:

"Q. It is your evidence that he [Meekins] signed the statement as his own voluntary act, without any offer of benefit being made, or any fear of reprisal. Is that correct?

"A. Yes, sir."

Davis, petitioner's court-appointed attorney, testified that Bloxom had informed him that the judge of the County Court had appointed him to defend Meekins; that he conferred with petitioner about 30 minutes on the morning of the preliminary hearing; that a plea of not guilty was entered in that court as shown by the record; that he cross-examined the Commonwealth's witnesses; that the written statement made by Meekins was introduced, which he had an opportunity to "peruse", and that he examined Trooper Ross as to the manner in which the statement was obtained. Davis was asked whether he inquired of Meekins if there were witnesses available to present any kind of defense, and he replied:

"We conferred at length. [after the preliminary hearing] I have here five sheets of yellow paper from a legal pad, in my handwriting, and I write very small, of facts related to me by Mr. Meekins. At no time did he mention any witnesses who could testify in his behalf, either from Washington, or witnesses from anywhere else. In fact, he admitted to me that he had been in this area, that he had been with these men who had robbed the bank, and that he had gone into the bank. Consequently, there were no witnesses—no necessity for him to mention witnesses to me to testify that he was elsewhere at the time."

Davis stated that he considered all of the facts and circumstances surrounding the robbery; that he discussed with Meekins the possible penalties that might be inflicted upon him; that he told petitioner that he could be tried by either the judge or a jury; that in either event he would not promise what the penalty would be; that he informed petitioner the nature of the plea to be entered was for him to decide, and that Meekins did decide to plead guilty to the robbery several days before his trial in the Circuit Court. Davis said that he conferred with Meekins on four separate occasions between the preliminary hearing and the trial.

Davis further testified that petitioner never stated to him that he gave the statement to Trooper Ross because of either duress or fear of the death penalty; that he knew when the court appointed him to represent Meekins that he had no money, and that "I never discussed money with him at any time."

At the conclusion of the evidence, the trial court observed: "* * * In this particular case, I never saw more definite and unquestionable testimony that this man was given a fair trial. * * * He [petitioner] doesn't make a case, to the Court's mind. Giving him credit for the truth as he remembers it, * * * witnesses testified just contrarily. This Court is compelled to deny the prayer of the petition."

[1] A judgment by a trial court on conflicting evidence has the force and effect of a jury's verdict and is binding upon us unless plainly wrong or without evidence to support it. *Ferrell* v. *Beddow*, 203 Va. 472, 476, 125 S.E. 2d 196, 200.

The trial court accepted the evidence offered by respondent Peyton as it had a right to do. Bloxom testified at the *habeas corpus* hearing that before Meekins was questioned at all, he voluntarily admitted as they left Washington that he participated in the robbery, and that Meekins made no request for counsel. In any event, the record before us does not show that this evidence was presented to the court at petitioner's trial for robbery. Trooper Ross stated that before Meekins gave and signed the statement implicating himself in the robbery, no threats or promises were made; that he advised Meekins that he had a right to remain silent; that he had a right to have counsel, and that any statement he made could be used in court against him.

[2] The principles enunciated in *Escobedo* v. *Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.ed. 2d 977, cited by petitioner, are applicable only to cases tried subsequent to June 22, 1964, the date of the decision. *Johnson* v. *New Jersey*, 384 U.S. 719, 86 S. Ct. 1772, 16 L.ed. 2d 882. In the case at bar petitioner was tried and convicted on October 15, 1963. Hence, *Escobedo* is not applicable to it.

At the time of petitioner's trial the test for admissibility of a confession was whether or not it was voluntary. The evidence adduced at the *habeas corpus* hearing amply supports the trial court's findings that Meekins "freely and voluntarily" admitted his participation in the crime, and that he was "fully advised of his constitutional rights prior to making a written statement."

Petitioner's claim that he was not effectively represented by his court-appointed attorney during his trial for robbery was not pressed in oral argument before us. However, we do find that the record clearly supports the trial court's conclusion that Meekins was "ably, competently and effectively represented".

We find no error in the judgment appealed from, and it is

*Affirmed.*