## Richmond

JACK DEAN CLEMMER V. COMMONWEALTH OF VIRGINIA.

March 4, 1968.

Record No. 6684.

Present, All the Justices.

*Bernard J. Natkin* for plaintiff in error.

*Charles Shepherd Cox, Jr., Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Jack Dean Clemmer was convicted of operating an automobile while under the influence of intoxicants in violation of Code § 18.1-54, 1960 Repl. Vol. He waived a jury, was tried by the court, found guilty, and sentenced to pay a fine of $200. From this judgment, he was granted a writ of error.

While defendant makes several assignments of error, the controlling question is whether the evidence is sufficient to support the judgment of conviction.

The testimony is from two witnesses only, and is brief. It establishes that on the afternoon of December 4, 1965, a motor vehicle driven by defendant, while proceeding south on Highway 610 in Augusta County, failed to negotiate a curve on the driver's left, crashed through a fence on the right side of the highway and ran into an adjoining pasture field. Lawrence M. Campbell, who was plowing in the field, saw defendant coming through the fence and there observed him "circling through the cattle". It appearing to Campbell that defendant might not stop, he ran toward the scene and stood in front of defendant's car with the intention of stopping him, or getting his license number if defendant tried to leave. Defendant stepped out of his car and walked up to Campbell, but made no response when questioned as to his name and address. Campbell told defendant that he had knocked down his fence and the cattle would get out in the road. Defendant replied, "Well, I'll fix your fence." Campbell then observed, "You are in no shape to fix no fence." Defendant's reaction was to go to his car, get his gloves, and, in the language of Campbell, "[M]ade out like he was going to fix the fence . . ." Campbell again told defendant that he was in no shape to fix the fence. To this statement, the witness testified that defendant "balled up his fists like he wanted to fight". Defendant talked a little bit more and said, "Well, if you ain't going to take me home then, I'll go myself". Defendant then went to his automobile, removed the keys, locked it, and went up the highway. Campbell testified that at the time of his conversation with him, defendant was "stuttering and staggering around"; that although he was within two or three feet of defendant, he did not "smell anything". Campbell watched Clemmer from the time he left the scene of the accident until he disappeared over a little knoll near the point where defendant was later interviewed by the officer and arrested.

The other witness, Trooper H. K. Wright, arrived at the scene

of the accident a very short time after it occurred. He testified that Campbell got into the patrol car with him; that they had proceeded a short distance when he saw defendant; that defendant was walking through a field; that defendant circled through a yard and came back to a garage, identified as Hewitt's Garage, where the officer had stopped. This garage is located on the highway, approximately 1000 feet distant from the point where defendant's car broke the fence. The trooper testified that he talked to defendant about the fence and the car going through it, and that Clemmer was very unsteady and belligerent. The trooper "asked him about his drinking", to which defendant responded: "[I]t wasn't any of my business what he had been drinking . . ." The trooper then told defendant that he "was charging him with driving under the influence and his right to have a blood test". The trooper was not asked, and did not testify, as to whether or not he observed the odor of alcohol on or about defendant, or in the vehicle which defendant was driving.

At the conclusion of the testimony of the Commonwealth, defendant moved the court to strike the evidence on the ground that it was insufficient to support a finding of guilty. The motion was overruled. Defendant then rested his case without presenting evidence in his own behalf and was found guilty.

[1] In *Meekins* v. *Peyton*, 208 Va. 114, 119, 155 S. E. 2d 52, 56, we find the following statement:

"A judgment by a trial court on conflicting evidence has the force and effect of a jury's verdict and is binding upon us unless plainly wrong or without evidence to support it. *Ferrell* v. *Beddow*, 203 Va. 472, 476, 125 S. E. 2d 196, 200."

Applying this yardstick, the evidence of the Commonwealth establishes a pattern of conduct and a series of acts, committed by defendant, entirely consistent with the actions of a person "under the influence of alcohol". Here we have an unexplained automobile accident resulting in damage to property. We have a driver immediately thereafter stuttering and staggering around, unsteady on his feet, belligerent, non-cooperative and arrogant. All of these acts are indicative of intoxication and all were apparent to observation.

However, absent from the record is any evidence that the behavior of defendant, though abnormal and unusual, was caused by the consumption of alcohol or any self-administered drug. Defendant engaged in conversation with both witnesses, and despite the fact he was within two or three feet of them, neither testified that there was any odor of alcohol on his breath, his person, or about the car he

was driving. No bottles of whiskey or other containers evidencing consumption of alcohol were found in or around the car, or along the route that defendant followed from the time he left the automobile until his arrival at Hewitt's Garage where he was arrested. Defendant was not seen drinking or consorting with drinking companions. He was not observed at an ABC store or an establishment that sells wine or beer. No case has been brought to our attention in which a defendant has been convicted of operating a motor vehicle under the influence of alcohol without some showing or indication of the agency which produced the intoxication.

The prosecution here is on a warrant for violation of a statute (Code § 18.1-54) which makes it unlawful for any person to drive a vehicle under the *influence of alcohol,* and the statute particularizes by naming alcohol, brandy, rum, whiskey, gin, wine, beer, lager beer, ale, porter, stout or any other liquid beverage or article containing *alcohol.* The gravamen of the offense is *driving* while under the influence of *alcohol,* and the Commonwealth must establish both essential facts beyond a reasonable doubt to carry the burden of proof. There appears to be no question involving self-administered drugs in this case.

Code § 4-2 (14) provides the accepted definition of intoxication as "Any person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed to be intoxicated." It is noted that to be intoxicated the person must have drunk a sufficient amount of *alcoholic beverages* so as to affect him.

[2] Defendant refused to submit to a blood test, and we therefore are deprived of this scientific method of determining whether or not he had consumed alcohol. However, the defendant had the power to refuse such a test under Code § 18.1-55.1 and his refusal could not be used as evidence in his trial, or considered here. *Walton* v. *City of Roanoke,* 204 Va. 678, 133 S.E. 2d 315.

[3] The defendant did not testify, but no inference against him can be drawn for that reason. *Bland* v. *City of Richmond,* 190 Va. 42, 55 S.E.2d 289; Code § 19.1-264.

[4] The Commonwealth contends that the nature of the accident, the defendant's conduct, manner and appearance immediately thereafter and at the time of his arrest, are sufficient evidence to show the corpus delicti; and specifically says that defendant's silence, after the trooper charged defendant with the crime of operating a motor

vehicle while under the influence of intoxicants, had the effect of a tacit admission by him of the truth of the charges, an expression of acquiescence. The Commonwealth points to *Baughan* v. *Commonwealth*, 206 Va. 28, 141 S. E. 2d 750; *Owens* v. *Commonwealth*, 186 Va. 689, 43 S. E. 2d 895; and to 7 Mich. Jur. *Evidence*, § 231. The authorities cited establish the general proposition that where a statement is made, either to a man or within his hearing, that he was concerned in the commission of a crime, to which he makes no reply, the natural inference is that the imputation is well-founded or he would have repelled it.

The evidence here is not such that one can infer from it a tacit admission by defendant that he had been drinking, or was under the influence of alcohol.

Defendant's reaction to Campbell's observation, that he was in no shape to fix a fence, was to go to his automobile, get his gloves and indicate that he was going to fix the fence. When Campbell remonstrated the second time as to his condition, defendant's reaction was to ball up his fists as if he wanted to fight. Apparently, defendant thought better of this impulse for he then locked his car and left. Although Campbell obviously thought that defendant had been drinking, his statement to defendant was not an accusation of drinking but rather his conclusion as to defendant's condition, from whatsoever cause. It was a conclusion which plainly was not acquiesced in by defendant.

With reference to the exchange between Trooper Wright and defendant, the trooper "asked him about his drinking". This was not necessarily an accusation. It was more in the nature of an inquiry. In any event, it provoked an answer from defendant. His answer that it was none of the trooper's business what he had been drinking can be interpreted as an insolent answer to an officer of the law, but it cannot be construed as a tacit admission that defendant had been drinking alcohol or was under the influence of alcohol.

Immediately following defendant's statement that it was none of the trooper's business what he had been drinking, the trooper told defendant that he was charging him with driving under the influence and his right to have a blood test. We cannot agree that the failure of defendant to profess innocence at this time, and the reservation by him of his plea of not guilty for the proper forum, can be construed as a tacit admission of the truth of the charge for which he had been arrested. Defendant had indicated that he was not going to cooperate with the officer or give him any information. The officer had de-

cided that defendant was under the influence of alcohol and had made the arrest. Defendant had nothing to gain at that stage by denying the charge to the officer. He apparently concluded to stand mute as being the safest course for him to pursue.

[5] The burden was on the Commonwealth to prove that the defendant was under the influence of intoxicants, not on the defendant to prove that he was not. The Commonwealth's evidence must exclude every reasonable hypothesis of innocence. Until that is done the defendant is not required to explain or to offer evidence of his innocence. *Fowlkes* v. *Commonwealth*, 194 Va. 676, 74 S. E. 2d 683; *Bland* v. *City of Richmond, supra; Coffey* v. *Commonwealth*, 202 Va. 185, 116 S. E. 2d 257.

The manner in which the accident occurred, the appearance and behavior of defendant, and his bizarre conduct generally, constitute sufficient evidence to engender a probability of guilt. However, the evidence fails to establish that the drinking of alcohol or the self-administering of drugs caused this conduct, and, in its absence, we are unable to conclude that beyond a reasonable doubt defendant operated his automobile under the influence of alcohol or some self-administered drug. The judgment of conviction is reversed and the case is dismissed.

*Reversed and dismissed.*