COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Alston and Russell
Argued at Lexington, Virginia

KENNETH EDWARD HICKS

v.      Record No. 1093-16-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
AUGUST 29, 2017

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

Robert M. Galumbeck (Galumbeck and Kegley, Attorneys, on
brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Kenneth Edward Hicks ("appellant") appeals his conviction for driving while under the

influence of drugs, second offense within ten years, in violation of Code §§ 18.2-266 and

18.2-270. Appellant argues that the trial court erred by failing to suppress the certificate of

analysis from evidence, and by denying his motion to strike the evidence and motion to set aside

the jury verdict. We disagree, and affirm the decision of the trial court.

BACKGROUND

On March 12, 2015, while driving on Interstate 81, in Roanoke, Virginia, appellant hit a

car parked on the side of the road. He was subsequently arrested for driving under the influence

of drugs. At a jury trial on May 18, 2016, Mark Rudd, of the Safety Patrol Service, testified that

he responded to the scene of an accident on Interstate 81. When he got there he observed a

vehicle parked on the side of the road with some "scuffs" on the side of it, and a vehicle pulled

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

over in front of it.  Rudd further testified that he observed appellant walking out into the lanes of Interstate 81, "a little bit staggering" and "pacing back and forth."  Rudd got in between appellant and the road to prevent appellant from being hit by a car, and stayed with appellant until the police arrived.

Trooper Matthew Hagy also testified.  He stated that when he arrived on the scene he saw two vehicles on the side of Interstate 81.  The damage to one vehicle was on the driver's side, and the damage to the offending vehicle was on the passenger's side.  This damage corresponded with a collision.  Hagy stated that when he talked to appellant, appellant admitted to being the driver of the offending vehicle.  Hagy observed that appellant seemed unsteady on his feet while they talked.  Appellant also had glassy eyes and slurred speech.  Hagy conducted five different field sobriety tests on appellant, and appellant could not successfully complete any of them.  After the tests, Hagy read appellant his <u>Miranda</u> rights and placed him under arrest.  Thereafter, appellant told Hagy that he had taken Valium, Percocet, and Neurontin before the crash.  Hagy informed appellant of the implied consent law, and appellant agreed to have his blood drawn.  Hagy testified that he did not have a search warrant for appellant's blood draw.

Appellant's counsel objected at this point, arguing that appellant did not waive his <u>Miranda</u> rights, and thus, his blood should not have been drawn.  The trial court overruled appellant's objection, finding that appellant freely, voluntarily, and intelligently acknowledged his understanding of the <u>Miranda</u> warnings issued by Hagy, and then responded to Hagy's questions.

Dr. James Kuhlman, a forensic toxicologist, testified about the laboratory testing of appellant's blood samples, and the certificate of analysis.  During Kuhlman's *voir dire*, outside the presence of the jury, Kuhlman stated that when a blood test kit arrives at the laboratory, a toxicologist receives it, and verifies that it is unopened.  The toxicologist will then open the test

kit and begin to create a record by generating a laboratory accessioning number, which is entered into the laboratory's computer system. The certificate of analysis presented at trial included the name of the toxicologist who opened the blood sample, in this case, Davis Blanchard. Kuhlman testified that he did not directly oversee this process. However, Kuhlman stated that at the end of the laboratory work, he goes back, retrieves the evidence, and looks at it to ensure that the toxicologists did not make any mistakes.

Kuhlman stated that Chad Harris performed the first test of appellant's blood sample on March 20, 2015. Harris performed an alcohol analysis, and no ethanol was detected. Harris also conducted the next part of the testing process, called amino assay, on March 27, 2015. This process allows toxicologists to test several samples at once, which eliminates any negative samples. While Kuhlman did not observe Harris performing this process, he testified that he knew that it was done correctly

> because the other procedure that we do has very rigid quality control criteria. There are positive samples, there are negative known samples, one with each one. We have criteria for -- in this particular cases the instrument is rating a visual absorbance; it has to be a certain concentration to be acceptable. It has to be between a certain range to be acceptable for us to call it negative and positive. You can't physically do any of that. You load the sample in the instrument and a whole bunch of computer printouts . . . [u]nless you have all the data it's not like you can change it.

Kuhlman further testified that he knew the blood sample that was tested belonged to appellant because of the chain of custody. Kuhlman stated that if Harris did not follow the chain of custody, he would know because two tests are run on each blood sample, and any discrepancies would be caught.

Kuhlman stated that his job as the examiner is to determine if the two sets of results match. In this case, the results produced by the toxicologists showed that appellant tested positive for two different types of drugs. One toxicologist did the Oxycodone analysis, and

another toxicologist did the Diazepam, Nordiazepam, Oxazepam, and Temazepam analysis. Kuhlman stated that once he receives these results he does "what's called an examination. I have to inspect all of the data, and that is the printouts, the information that's coming from all the various instruments, check the chain of custody documentation, check to make sure all of the quality control procedures were followed, because it's all documented." Kuhlman further testified: "I'm the one that's making those decisions determining it and then deciding how to report it on the final [c]ertificate of [a]nalysis." Kuhlman also testified that the Director of the Department of Forensic Science ("DFS") designated him to sign certificates of analysis.

The laboratory uses quality control measures to determine whether toxicologists conduct laboratory work according to protocol. Kuhlman testified that another part of his job as an examiner is not only to ensure that the toxicologists follow all the quality controls, but also to make certain that the report they submit coincides with the blood sample analyzed. Kuhlman stated that his job in court is to testify to the data and results as provided in the certificate of analysis.

After the *voir dire* examination, appellant made a motion to suppress the certificate of analysis. He argued that appellant was left with no one to cross-examine about when the laboratory received appellant's blood sample, and what condition it was in, because Kuhlman did not actually handle that portion of the testing. Specifically, appellant argued that it is significant that he could not cross-examine the necessary witnesses in his case and that this issue was addressed by the Supreme Court of the United States in Bullcoming v. New Mexico, 564 U.S. 647 (2011). The Code explicitly states that a certificate of analysis must be signed by the designee of the Director of DFS. Appellant stated that Kuhlman's signature on the certificate of analysis merely asserts that he is a DFS employee. According to appellant, the Commonwealth also did not provide any documentation that the Director of DFS designated Kuhlman.

- 4 -

Additionally, appellant attempted to raise "one other objection" with respect to admission of the certificate of analysis, stating as follows:

> I'm just raising this one, Judge, because it's in front of the Supreme Court right now and I want to put it on the record -- and that was that the test was given by [i]mplied [c]onsent without a search warrant being issued under the [Schmerber] case. And as I said, I'm only raising that because it's currently before the Supreme Court.

However, appellant did not identify the case that was in front of the Supreme Court by name. He also did not state the argument, or arguments, before the Supreme Court in that case. At no time in the trial court did appellant ever argue that his consent to have his blood drawn was constitutionally invalid and had been coerced from him because he faced a criminal penalty if he had refused under Virginia's implied consent statute.

The Commonwealth responded to appellant's arguments, stating that with respect to the designation issue, at the bottom of the certificate of analysis, by Kuhlman's signature, it says "this duty has been delegated to me by the Director of the Department of Forensic Science." Additionally, Kuhlman gave sworn testimony that the Director of DFS designated him to sign certificates of analysis. As for the chain of custody issue, the Commonwealth argued that the trial court should rely on Code § 19.2-187.01 which states:

> A report of analysis duly attested by the person performing such analysis or examination by any laboratory operated by the Division of Consolidated Laboratory Services, the Department of Forensic Science, or any of its regional laboratories shall be *prima facie* evidence in a criminal or civil proceeding as the custody of the material described therein from the time such material is received by an authorized agent of such laboratory until such material is released subsequent to such analysis or examination.

Kuhlman testified at trial, and he is the one ultimately responsible for the findings in the certificate of analysis. He examines everything, and determines whether the findings of each toxicologist are consistent with DFS's quality control regulations.

- 5 -

The trial court overruled appellant's motion, finding that the certificate of analysis offered by the Commonwealth was in compliance with Code §§ 19.2-187, 18.2-268.7, and 19.2-187.1(B)(i). The trial court also found that Kuhlman reviewed the entire process of testing appellant's blood for drugs and that he used this as the basis for his analysis and opinion. The trial court determined that the issues raised by appellant go to the weight of his analysis, and not to the admissibility of the certificate of analysis.

During Kuhlman's direct examination, the trial court qualified him as an expert in the field of forensic toxicology, as well as performance toxicology, a subset of forensic toxicology focused on how drugs and/or alcohol affect a person's performance or behavior. Kuhlman testified that when he examined the blood sample, he could determine whether it contained any drugs or alcohol. He found Diazepam (or Valium) at 1.4 milligrams per liter; Nordiazepam at .57 milligrams per liter, Oxazepam at .015 milligrams per liter, and Temazepam at .028 milligrams per liter. Nordiazepam, Oxazepam, and Temazepam are all milder forms of Diazepam, and occur as the body metabolizes Diazepam. Appellant's blood sample also contained Oxycodone at .28 milligrams per liter. Kuhlman stated that he would qualify 1.4 milligrams per liter of Diazepam as a high level. Kuhlman testified that the Oxycodone contained in appellant's blood,

> is not a low dose . . . . This would be the type of blood
> concentrations that you might expect in a person who has
> long-term chronic pain. I don't know anything about [appellant]
> . . . . So this could be a high level, it could be a normal level for a
> patient. It's not low for anyone, but it could be normal for him or
> it could be too much. I don't know.

Kuhlman further testified that a person can experience side effects from medications like Oxycodone or Diazepam, even if they are taking it at a prescribed dosage.

Kuhlman then testified about the side effects of the drugs found in appellant's system. He stated that the side effects of Diazepam include: drowsiness, dizziness, poor concentration,

poor hand-eye coordination, and a slow reaction time. Diazepam can also cause individuals to have slurred speech and poor balance. The degree to which an individual exhibits these side effects depends on the person and their experience with the drug. Kuhlman stated that the side effects of Oxycodone include drowsiness and a lack of coordination. Kuhlman testified that the side effects of Diazepam and Oxycodone can affect a person's ability to operate a motor vehicle because

> [o]perating a motor vehicle is very much a multitasking event . . . .
> When you introduce a depressant drug into that process it slows
> [down your reaction time]. So you're not going to make a decision
> as quickly as you should. You're not going to react as quickly as
> you should. You're not going to anticipate the behavior of another
> vehicle or pedestrian there on the side. You're not going to be able
> to perform as quickly. The degree and the more pronounced the
> depressant effects the more it's going to affect your ability to drive
> safely.

Kuhlman further testified that staggering or a lack of balance, lane drifting, and slurred speech are consistent with the side effects of Diazepam and Oxycodone. However, Kuhlman also stated that he does not know the specific effects of the drugs on appellant, and he could not say that Diazepam and Oxycodone would have prevented appellant from driving safely.

At the close of the Commonwealth's case-in-chief, appellant made a motion to strike the evidence. He argued that the Commonwealth did not prove that appellant was under the influence of drugs at the time of the offense because Kuhlman testified that he did not know appellant's tolerance for Diazepam and Oxycodone. Appellant stated that the Commonwealth did not present any evidence about the accident, which is necessary to know whether appellant could safely operate a motor vehicle. Appellant also argued that the Commonwealth did not provide any evidence that the drugs found in appellant's system were self-administered.

The trial court denied appellant's motion, stating that the issues appellant argued were issues for the jury.

Appellant did not present any evidence. The jury found appellant guilty of driving under the influence of drugs, second offense in ten years. After the jury issued its verdict, appellant made a motion to set aside the guilty verdict based on the arguments previously presented in his motion to strike. The trial court overruled the motion citing its previous rulings. The jury recommended a sentence of twelve months in jail. On June 9, 2016, the trial court entered an order accepting the jury's recommendation, and sentencing appellant to twelve months in jail. This appeal followed.

ANALYSIS

I. Appellant Waived His Objection to the Trial Court's Admission of the Certificate of Analysis Based on the Fact that the Commonwealth Did Not Have a Search Warrant.

Appellant argues that the trial court erred in denying his motion to suppress the certificate of analysis because the Commonwealth did not have a search warrant to obtain appellant's blood in violation of the Fourth Amendment. Appellant states that a search warrant is necessary because he would be exposed to criminal penalties if he refused to have his blood drawn, pursuant to Code § 18.2-268.3. Appellant further contends that, under the Supreme Court's decision in Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), which was decided after his trial, the potential criminal penalty negates his consent, invalidating the blood draw and the subsequent chemical analysis. The Commonwealth argues that appellant did not preserve this argument, and it is therefore barred from consideration by Rule 5A:18. We agree with the Commonwealth.

Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Applying Rule 5A:18, we have consistently held that we "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26

Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). "The same argument must have been raised, with specificity, at trial before it can be considered on appeal." Correll v. Commonwealth, 42 Va. App. 311, 314, 591 S.E.2d 712, 719 (2004). "Rule 5A:18 requires a litigant to make timely and specific objections so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010) (quoting West v. Commonwealth, 43 Va. App. 327, 337, 597 S.E.2d 274, 278 (2004)).

In this case, appellant never argued, either explicitly or implicitly, at the trial court that a search warrant was necessary for his blood draw because the specter of a criminal penalty for refusal invalidated his consent. When appellant made a motion to suppress the certificate of analysis his argument focused mainly on the fact that he could not cross-examine every toxicologist whose testing affected the results in the certificate of analysis. The only part of appellant's argument that did not involve the Confrontation Clause occurred when appellant stated: "the test was given by [i]mplied [c]onsent without a search warrant being issued under the [Schmerber] case. And as I said, I'm only raising that because it's currently before the Supreme Court." He never mentioned the case, Birchfield, by name, he merely stated that a relevant case was "currently before the Supreme Court." Birchfield actually involves three different petitioners whose appeals were consolidated for consideration into one case. 136 S. Ct. at 2186. Birchfield deals with implied consent in various scenarios, including blood tests, breath tests, civil penalties, and criminal penalties. Id. at 2183-86. Thus, even if appellant's oblique reference to a case "currently before the Supreme Court" were deemed sufficient to identify Birchfield, appellant's argument in the trial court does not specifically identify which part of Birchfield applies to his case.

Appellant also argues, incorrectly, that he can raise this issue for the first time on appeal because it concerns a substantive constitutional right. The Supreme Court of Virginia has held,

> [i]f a criminal defendant fails to preserve an issue in the trial court, he can waive claimed violations of his constitutional right to be free of unreasonable searches and seizures under the Fourth Amendment . . . . Procedural default principles, including Rules 5:25 and 5A:18, still apply, as do traditional finality principles protecting judgments no longer within the trial court's active jurisdiction.

Jones v. Commonwealth, 293 Va. 29, 47-48, 795 S.E.2d 705, 716 (2017). In this case, appellant did not raise a timely objection to the certificate of analysis based on the lack of a search warrant for the blood draw. As such, the trial court did not have an opportunity to rule on this objection, and it was not preserved. Because appellant failed to raise this specific argument in the trial court, we will not consider it now on appeal.

II. The Trial Court's Admission of the Certificate of Analysis If in Error, Was in Fact Harmless.

Appellant argues that it was constitutional error to allow the certificate of analysis into evidence because appellant was deprived of his right to confront witnesses against him, in violation of the Confrontation Clause. Assuming that the trial court erred in admitting the certificate of analysis into evidence, this error was harmless.

This Court has held that "[c]onstitutional error . . . is harmless only when the reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt." Lavinder v. Commonwealth, 12 Va. App. 1003, 1006, 407 S.E.2d 910, 911 (1991) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). This Court further held:

> Use of the "beyond a reasonable doubt" standard, while an appropriate measure of confidence in fact finding, is an unusual device to use in deciding questions of law. Like "preponderance of the evidence" and "clear and convincing evidence," "beyond a reasonable doubt" is a relative and subjective standard suitable for measuring the probability of the occurrence of a past event. But, in determining if an error is harmless, a reviewing court does not decide the probability of the occurrence of a past event, i.e. if, in

fact, the defendant committed the crime charged. It determines, instead, whether, as a matter of law, this decision by the fact finder was affected by the error. If so, the error is not harmless; if not, the error is harmless.

Id. As such, error, if any, was harmless in this case.

Code § 18.2-266(iii) states that in order to convict appellant of driving under the influence, the Commonwealth must prove that appellant drove "under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle." It is not contested in this case that appellant was driving.

The Commonwealth proved appellant's impairment through the testimony of Rudd and Hagy. Rudd testified that when he arrived at the scene of the accident on March 12, 2015, appellant was staggering and pacing near Interstate 81. Rudd also said that he stood between appellant and the road because he was afraid that appellant would wander into the lanes of traffic and get hit by a passing car. Hagy testified that when he arrived on the scene, appellant admitted that he had been driving. Hagy also observed that the two cars involved had damage consistent with two cars colliding. Hagy testified that appellant had glassy eyes, slurred speech, and seemed unsteady on his feet. He also put appellant through five field sobriety tests, and appellant failed to complete any of them. After Hagy read appellant his Miranda rights, appellant admitted to Hagy that he had taken Valium, Percocet, and Neurontin. This evidence is sufficient to show that appellant was impaired.

Appellant argues that any error in admitting the certificate of analysis was not harmless because its presence allowed Kuhlman to testify as to the impact of the amount of substance in appellant's blood, which may have affected his ability to drive. However, Kuhlman stated that he did not know the specific side effects of Diazepam and Oxycodone on appellant, thus, he could not testify as to whether appellant could safely drive with the drug levels found in his

- 11 -

system. Kuhlman did testify about the side effects of the drugs found in appellant's blood sample, including drowsiness, dizziness, poor concentration, slurred speech, and a slow reaction time. These side effects are consistent with appellant's physical appearance and behavior observed by Rudd and Hagy at the scene of the accident.

The evidence without the certificate of analysis was sufficient to prove that appellant was driving under the influence. Appellant admitted to taking Valium, Percocet, and Neurontin. He also exhibited the side effects of these drugs. Thus, we decline to address the merits of this assignment of error and find that any error in this case was harmless beyond a reasonable doubt.

III. The Trial Court Did Not Err in Denying Appellant's Motion to Strike the Evidence and Motion to Set Aside the Verdict.

Appellant argues that the trial court erred because the evidence in this case was insufficient to prove that appellant was guilty beyond a reasonable doubt of driving under the influence of drugs, second offense in ten years. Thus, he contends that the trial court should have granted his motion to strike the evidence and his motion to set aside the jury verdict. We disagree.

When considering the sufficiency of the evidence on appeal in a criminal case, this Court views the evidence "in the light most favorable to the Commonwealth and give[s] it all reasonable inferences fairly deducible therefrom." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On review, this Court does not substitute its own judgment for that of the trier of fact. See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). The trial court's judgment "will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Appellant relies on the case of Clemmer v. Commonwealth, 208 Va. 661, 159 S.E.2d 664 (1968), to argue that the Commonwealth provided no evidence that appellant was driving under

the influence of drugs. However, Clemmer can be distinguished from the present case because in Clemmer there was no evidence that the appellant operated his vehicle under the influence of alcohol, or some self-administered drug, despite his bizarre behavior. Id. at 666, 159 S.E.2d at 667. In this case, a Safety Service Patrol officer, who had been dispatched to an accident, found appellant on the side of the road. Rudd observed appellant staggering and pacing by the road, and even had to get between appellant and the interstate because he was afraid appellant would walk into a lane, and get hit by a passing car. When Trooper Hagy arrived on the scene he testified that appellant admitted that he had been driving the offending vehicle. Hagy also stated that appellant seemed unsteady on his feet, and had glassy eyes and slurred speech. Hagy put appellant through five field sobriety tests, all of which, appellant failed.

The Supreme Court of Virginia explained that Clemmer stands for the proposition "that there can be no conviction under the statute unless there was evidence tending to establish the agency responsible for the erratic behavior of the accused." Miller v. Commonwealth, 214 Va. 689, 690, 204 S.E.2d 268, 269 (1974). After Hagy arrested appellant and read him his Miranda rights, appellant admitted that he took Valium, Percocet, and Neurontin before the crash. This admission is consistent with the drugs found in appellant's system. Also, appellant's behavior, observed by Hagy and Rudd, is consistent with the side effects that Kuhlman mentioned may accompany Diazepam and Oxycodone. These side effects include slow reaction times, slurred speech, dizziness, and drowsiness. It is reasonable to believe in this case that the drugs appellant ingested caused his impairment. Based on all the evidence, the trial court's decision in this case was not plainly wrong, and was supported by the evidence presented at trial.

Thus, the decision of the trial court is affirmed.

CONCLUSION

We find that we do not need to address the merits of the first two assignments of error because appellant did not properly preserve for appeal his argument that the certificate of analysis should not be admitted into evidence because the Commonwealth did not have a search warrant to draw his blood. We further find that any error by the trial court in admitting the certificate of analysis into evidence was harmless. We hold that the trial court did not err when it denied appellant's motion to strike and motion to set aside the verdict. Thus, appellant's conviction of driving while under the influence of drugs, second offense within ten years, in violation of Code §§ 18.2-266 and 18.2-270, is affirmed.

<u>Affirmed.</u>