COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Callins and Frucci
Argued at Salem, Virginia

**UNPUBLISHED**

LONNIE LEWIS RICHERSON

v.      Record No. 0493-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
JANUARY 7, 2025

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Ronnie H. West (West Law Firm, PLC, on brief), for appellant.

Mary Catherine Talbott, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a bench trial in the Circuit Court of the City of Lynchburg ("trial court"), Lonnie

Lewis Richerson ("Richerson") was convicted of driving while under the influence of alcohol in

violation of Code § 18.2-266, driving after forfeiture of license in violation of Code §§ 18.2-270 and

18.2-272, and refusal, second offense within ten years, in violation of Code § 18.2-268.3.[1]  On

appeal, Richerson contends that the Commonwealth failed to establish that he was under the

influence of alcohol while driving, thus rendering the evidence insufficient to support his driving

under the influence of alcohol conviction.  For the following reasons, we find the evidence

insufficient and therefore reverse his conviction.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Richerson does not challenge his driving on a suspended license and refusal
convictions.

I. BACKGROUND[2]

Late in the evening of May 21, 2023, Officer John Person ("Officer Person") and another officer of the Lynchburg Police Department initiated a traffic stop of a vehicle traveling on a public highway after determining that the driver's license of the registered owner of the vehicle was suspended. When Officer Person activated his emergency lights and siren, the vehicle failed to come to a stop for 0.2 miles before finally turning into the parking lot of a 7-Eleven and coming to a stop. During the short pursuit, Officer Person did not document Richerson driving erratically.

After activating his body-worn camera, Officer Person approached the vehicle's driver side, while his accompanying officer approached the passenger side. Officer Person found Richerson seated in the driver's seat of the vehicle with the window rolled up. A woman was seated in the front passenger's seat. In order to determine whether Richerson was the vehicle's registered owner, Officer Person knocked on the driver's side window and requested that Richerson roll the window down. Richerson rolled his window down, and Officer Person detected the odor of alcohol emanating from inside the vehicle.[3] Officer Person was able to identify Richerson, whose driver's license was suspended, as the registered owner of the vehicle. Officer Person then asked Richerson why it took him so long to pull his vehicle over into the 7-Eleven parking lot. Richerson explained that he "didn't see" Officer Person's patrol vehicle

---

[2] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] The body camera video documents Richerson talking with Officer Person in a low and sometimes muffled voice.

until his female passenger alerted him to the patrol vehicle's presence. Richerson then asked Officer Person why he had been pulled over for driving on a suspended license. Officer Person responded that he had "r[un] his tags." Richerson's front passenger further informed Officer Person that Richerson was trying to "drive her home" since she also lacked a valid driver's license. During this initial interview, Officer Person observed that Richerson had "glassy eyes," slurred his speech, and appeared to be confused regarding why he had been stopped. But the body-worn-camera footage documents Richerson avoiding eye contact with Officer Person, by looking in a different direction or by glancing back at his passenger, as they talked.

Officer Person next asked three separate times for Richerson to exit the vehicle. After initially refusing to do so on the grounds that he did not believe that Officer Person had a reason to run his tags, Richerson eventually acquiesced and exited the vehicle. Once outside the vehicle, the body-worn-camera footage showed Richerson departing his vehicle while looking in the opposite direction of Officer Person, before turning around to permit the officers to pat him down. Officer Person verbally noted that Richerson was refusing to make eye contact with him and also stated that he smelled the odor of alcohol on Richerson's breath. Once the pat down concluded, Richerson is seen walking toward the front of his vehicle before being redirected to walk to the police vehicle. The body-worn-camera footage then shows Richerson slowly walking toward the police vehicle while looking at the police vehicle and away from Officer Person and his accompanying officer. And this footage does not document Richerson exhibiting issues with his stability as he walked with the officers.

Officer Person then had Richerson walk with him away from Richerson's vehicle and confronted Richerson about the presence of alcohol on his person, asking him specifically "how much have you been drinking?" Richerson then denied that he had consumed alcohol that evening. Officer Person followed this question by requesting that Richerson perform field

sobriety tests, which Richerson refused on the grounds that he "had nothing to drink." Officer Person then asked Richerson if he was "okay" because "he was acting a little funny" and was continuing to not make eye contact with him. Richerson responded that he was "fine" and that he was not making eye contact with the officer because "he didn't have to." Based on Officer Person's observations during the interview, he arrested Richerson for driving under the influence of alcohol. In total, Richerson's interactions with Officer Person lasted less than five minutes.

After being transported to the Lynchburg Police Department, Officer Person requested that Richerson perform a breathalyzer test. Richerson refused. As a result of the refusal, in addition to the charges of driving on a suspended license and driving under the influence of alcohol (third or subsequent offense within ten years), Richerson was also charged with unreasonably refusing to submit to a chemical test to determine his blood alcohol content (second or subsequent offense within ten years).

Richerson subsequently pleaded not guilty to the alleged offenses and waived his right to trial by jury. At trial, the Commonwealth also entered into evidence footage from Officer Person's body camera recording the traffic stop as well as footage of Richerson's refusal to provide a breath sample for analysis at the police station. At the conclusion of the Commonwealth's case in chief, Richerson moved to strike, asserting that the Commonwealth's evidence was insufficient to support each of the charges. In support of his motion to strike his driving under the influence of alcohol charge, Richerson contended that because the Commonwealth failed to enter into evidence a "chemical analysis showing a BAC of .08 or higher," and the evidence otherwise reflected "no erratic driving behavior," the evidence as to each of the charges was insufficient as a matter of law to convict him of the offense. The trial court then denied Richerson's motion to strike the charges against him.

Richerson neither testified in his own defense nor introduced any evidence before resting his case. At the conclusion of all the evidence, Richerson renewed his motion to strike the driving under the influence charge, again asserting that the evidence supporting the charge was insufficient as a matter of law on the same grounds as previously argued. The trial court then denied Richerson's renewed motion to strike and following closing arguments, convicted Richerson on each charge.

Following a sentencing hearing, on March 8, 2024, the trial court entered a final order sentencing Richerson to serve 5 years and 24 months of incarceration, with all but 1 year suspended; 18 months of probation; and 5 years of good behavior. The trial court also fined Richerson $1,000 and suspended his driver's license for an indefinite period. Richerson appealed and challenges his driving under the influence of alcohol conviction.

II. ANALYSIS

A. *Standard of Review*

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280

Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. *The evidence in the record was insufficient to support Richerson's conviction.*

Challenging only his driving under the influence of alcohol conviction, Richerson asserts that the trial court erred by convicting him when he denied consuming alcohol, did not undertake a field sobriety test, and the Commonwealth failed to cite driving behavior indicating that he was intoxicated. He further contends that the absence of alcohol in the car as well as the absence of any chemical test establishing intoxication is fatal to his conviction for driving under the influence of alcohol (third or subsequent offense). As a result, he argues that the evidence in support of the conviction is insufficient as a matter of law. We agree in part.

Code § 18.2-266(ii), which makes it "unlawful for any person to drive or operate any motor vehicle . . . while such person is under the influence of alcohol," does not "require[] proof of a specific blood-alcohol level." *Beckham v. Commonwealth*, 67 Va. App. 654, 662 (2017). Rather, "proof that the accused is simply 'under the influence' . . . is sufficient to convict." *Id.* (quoting Code § 18.2-266(ii)). For guidance in determining whether a defendant is "under the influence," we look to the statutory definition of "intoxicated" provided in the Alcoholic Beverage Control Act. *Leake v. Commonwealth*, 27 Va. App. 101, 109-10 (1998); Code §§ 4.1-100 to -133. "'Intoxicated' means a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." *Leake*, 27 Va. App. at 110 (quoting Code § 4.1-100).

To that end, the Commonwealth is not required to present scientific proof, such as blood alcohol test results, to support a driving while under the influence conviction. *See, e.g.*, *Stevens*

*v. Commonwealth*, 46 Va. App. 234, 245 (2005) (noting that "blood test results are not required to prove intoxication for prosecution under clauses (ii), (iii) or (iv) of Code § 18.2-266"); *Oliver v. Commonwealth*, 40 Va. App. 20, 24 (2003) ("Test results from a breath or blood test are not necessary or required to prove driving under the influence of alcohol or drugs.").[4]  Instead, "the result of . . . [such an] analysis is but auxiliary proof which may tend to corroborate evidence of the objective symptoms [of being under the influence of alcohol]." *Thurston v. City of Lynchburg*, 15 Va. App. 475, 483 (1992) (third alteration in original) (quoting *Brooks v. City of Newport News*, 224 Va. 311, 316 (1982)).  Hence, in cases where the Commonwealth does not introduce a chemical test of a defendant's blood or breath at trial, "whether a [person i]s under the influence[ must be determined from] '*all of the evidence of his condition* at the time of the alleged offense.'" *Hogle v. Commonwealth*, 75 Va. App. 743, 754 (2022) (emphasis added) (quoting *Leake*, 27 Va. App. at 109).

Also, in making this inquiry, this Court "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).  "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable

---

[4] "Had the General Assembly intended to require the [Commonwealth to produce such evidence] for a prosecution under [Code § 18.2-266], it would have specifically provided so; however, it did not." *Stevens*, 46 Va. App. at 245.  Therefore, "[t]he omission, in this context, makes it apparent that the legislature did not require [such evidentiary] hurdles." *Id.*; *see, e.g.*, *Jordan v. Town of South Boston*, 138 Va. 838, 844-45 (1924) ("Courts 'cannot read into a statute something that is not within the manifest intention of the legislature as gathered from the statute itself.  To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret." (quoting 25 *Ruling Case Law* § 218, at 963 (1919))).

doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

But "[e]vidence is insufficient 'to support a conviction if it engenders only a suspicion or even a probability of guilt. . . . The evidence must be such that it excludes every reasonable hypothesis of innocence." *Potts v. Commonwealth*, 12 Va. App. 1093, 1097-98 (1991) (second alteration in original) (quoting *Coffey v. Commonwealth*, 202 Va. 185, 188 (1960)). And in driving under the influence cases, this reasonable hypothesis is not excluded where, in the totality of the circumstances, the Commonwealth primarily relies on evidence of the defendant's physical state as testified to by law enforcement, *see id.* at 1098, evidence of "bizarre conduct," *Clemmer v. Commonwealth*, 208 Va. 661, 666 (1968), or evidence of the defendant's "unreasonable statements" without connection to the conduct in question, *Coffey*, 202 Va. at 188.

In *Potts*, this Court found that the Commonwealth failed to meet its burden of proving that the defendant drove under the influence where "the only evidence of record" introduced was that the responding officer noted that "[the defendant's] eyes were bloodshot, his face was flushed and reddish in color, and he had a 'strong odor of alcohol,'" and no other evidence in the record showed the defendant was in that condition at the time he was behind the wheel. 12 Va. App. at 1098. Further, in *Clemmer*, the Supreme Court of Virginia found that evidence introduced by the Commonwealth was insufficient to support a driving under the influence conviction where it showed that the defendant was seen "stuttering and staggering around" the scene of an accident, appearing to law enforcement to be "very unsteady and belligerent," and responding that "[it] wasn't any of [the searching officer's] business what he had been drinking" when the officer "asked him about his drinking" that evening. 208 Va. at 662-63. There, the Court reasoned that the Commonwealth failed to exclude "every reasonable hypothesis" of the defendant's innocence as "[t]he manner in which the accident occurred, the appearance and

behavior of defendant, and his bizarre conduct generally, constitute sufficient evidence to *engender a probability of guilt*" but this evidence "fail[ed] to establish that the drinking of alcohol or the self-administering of drugs caused this conduct, and, in its absence, we are unable to conclude that beyond a reasonable doubt defendant operated his automobile under the influence of alcohol." *Id.* at 666 (emphasis added). And, in *Coffey*, the Supreme Court found that evidence of "unreasonable statements made by the [defendant] regarding the brushing of his teeth with alcohol, the drinking of vinegar, and consuming 'camphor or rock candy solution'" and that "he 'had had nothing to drink for four days'" (in response to being questioned about why he smelled like alcohol) were insufficient by themselves to support a driving under the influence conviction. 202 Va. at 187-88. There, the Court reasoned that although these statements on their own were sufficient to "engender[] . . . a suspicion or even a probability of guilt" regarding his consumption of alcohol, they were insufficient to exclude the defendant's reasonable hypothesis of innocence "beyond a reasonable doubt." *Id.* at 188.

Here, even viewing the record in the light most favorable to the Commonwealth, we find insufficient evidence to support Richerson's conviction. To support Richerson's conviction, the Commonwealth introduced Officer Person's testimony regarding his observations of Richerson's behavior and manner at the time of the stop, and the less than five-minute body camera video he recorded in doing so, to support the conclusion that he was intoxicated at the time he was behind the wheel. This evidence focused on inferring Richerson's intoxication from his physical appearance in a similar way to the evidence before this Court in *Potts*. 12 Va. App. at 1099.

In *Potts*, the Commonwealth had introduced evidence noting that "[the defendant's] eyes were bloodshot, his face was flushed and reddish in color, and he had a 'strong odor of alcohol'" without evidence showing that the defendant had been in such condition while he was driving. 12 Va. App. at 1098. And, this Court found, standing alone, that this affirmative evidence was

- 9 -

insufficient to support convicting him of driving under the influence of alcohol. *Id.* at 1099. But, unlike *Potts*, the record before this Court does not even affirmatively support portions of the Commonwealth's account of Richerson's behaviors. Officer Person testified that an odor of alcohol emanated from the vehicle and from Richerson's person upon his exiting the vehicle, and Officer Person noted that he witnessed Richerson with "glassy eyes, slurred speech," and that Richerson was "sweating" and behaving in a manner he perceived as confusion. In reviewing the record, not all of Officer Person's testimony is supported by his body camera footage. Even viewed in the light most favorable to the Commonwealth, the footage shows Richerson completely avoiding eye contact with Officer Person and his accompanying officer, slowly walking about the scene without exhibiting issues with his balance, and responding to the officers' questions and directions in a normal manner. This inconsistency deprives the Commonwealth of the full inferential value of Officer Person's testimony, *see, e.g.*, *Turner v. Commonwealth*, 65 Va. App. 312, 331 (2015) ("This Court's deference to the fact finder 'applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved.'" (quoting *Sullivan*, 280 Va. at 676)); *Cnty. of Chesterfield v. Windy Hill, Ltd.*, 263 Va. 197, 200 (2002) (noting that an inference is not reasonable if "strained, forced, or contrary to reason"), and the remaining evidence otherwise fails to exclude other "reasonable hypothes[es] of innocence" for Richerson's behavior that flow from the circumstances, such as that he was tired or nervous, both plausible causes for his "sweating" and attempts to avoid eye contact. *Maust v. Commonwealth*, 77 Va. App. 687, 700 (2023) ("The Commonwealth . . . is not required to exclude every possibility that others may have committed the crime for which a defendant is charged, but is only required to exclude hypotheses of innocence *that flow from the evidence*." (alteration in original) (emphasis added) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000))). As a result, this evidence, in

capturing Richerson's behaviors and statements to Officer Person without anything more, we find "engenders only a suspicion or even a probability of guilt" and does not satisfy the Commonwealth's burden of proof. *Coffey*, 202 Va. at 188.

Further, even presuming that Officer Person's perceptions of Richerson were completely supported by the record, these perceptions would pale in comparison to the evidence of "bizarre conduct" the searching officer perceived in *Clemmer* that was found to be, standing alone, insufficient to support a driving under the influence conviction. 208 Va. at 666. There, the searching officer testified to witnessing the defendant "stuttering and staggering around, unsteady on his feet, belligerent, non-cooperative and arrogant." *Id.* at 663. The Supreme Court found that even these observations, with nothing more, "fail[ed] to establish that the drinking of alcohol or the self-administering of drugs *caused this conduct*" and prevented the Court from "conclud[ing] that beyond a reasonable doubt defendant operated his automobile under the influence of alcohol." *Id.* at 666 (emphasis added). Hence, as the body-worn-camera footage did not document Richerson exhibiting some clearer sign of intoxication in the form of erratic driving, instability in movement, or poor motor control, we cannot gleam support for Richerson's conviction from this otherwise innocuous evidence.

Moreover, Richerson admitted that he drove 0.2 miles before pulling over because he "didn't see" Officer Person's police cruiser, which had activated its siren and emergency lights, only becoming aware of the police cruiser when the passenger in his car alerted him. But Richerson's explanation in no way approaches the starkly "unreasonable statement" made in *Coffey*. 202 Va. at 188. In that case, the defendant attempted to explain away the strong smell of alcohol on his person by claiming that it was caused by "brushing . . . his teeth with alcohol, the drinking of vinegar, and consuming 'camphor or rock candy solution.'" 202 Va. at 188. The Supreme Court found these outlandish statements were only sufficient to show "a suspicion or

even a probability of guilt" and were not enough on their own to exclude the defendant's reasonable hypothesis of innocence "beyond a reasonable doubt." *Id.* To wit, Richerson's statements and conduct observed by Officer Person were in no way similar to those in *Coffey*. Richerson spoke in a low voice and appeared nervous. He also struggled to enunciate as he collected his thoughts and determined how he wanted to respond to the officer. But these considerations merely made him more "suspicio[us]" pertaining to whether he was under the influence of alcohol and, in the totality of the circumstances, only made it "probable" that he was intoxicated. *Potts*, 12 Va. App. at 1097-98 (quoting *Coffey*, 202 Va. at 188). Hence, in light of this juxtaposition, we find that the facts before us are similar to those in *Potts*, *Clemmer*, and *Coffey* and that all three apply with full force here. As sagely noted in *Coffey*, a "[c]onviction cannot rest upon conjecture. The evidence must be such that it excludes every reasonable hypothesis of innocence." 202 Va. at 188. And we find the evidence here failed to do so; therefore, we reverse Richerson's conviction.

## III. CONCLUSION

For the foregoing reasons, we find that the trial court erred in finding the evidence in the record sufficient to convict Richerson of driving under the influence. Therefore, the trial court's judgment is reversed and the driving under the influence charge against him is dismissed.

*Reversed and dismissed.*